1  LATHAM & WATKINS LLP
      Brook B. Roberts (SBN: 214794)
2        (brook.roberts@lw.com)
      Steven Lesan (SBN: 294786)
3        (steven.lesan@lw.com)
   12670 High Bluff Drive
4  San Diego, California 92130
   Telephone: (858) 523-5400
5  Facsimile: (858) 523-5450

6  Attorneys for Plaintiffs
   L.A. Terminals, Inc. and Soco West, Inc.

7

8                    UNITED STATES DISTRICT COURT

9

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  L.A. TERMINALS, INC. AND        CASE NO. 8:19-cv-00286-ODW-SS
    SOCO WEST, INC.,
13                                  **FIRST AMENDED COMPLAINT
                 Plaintiffs,        FOR BREACH OF CONTRACT,
14                                  DECLARATORY RELIEF, AND
           v.                       BREACH OF THE COVENANT OF
15                                  GOOD FAITH AND FAIR DEALING**
    UNITED NATIONAL INSURANCE
16  COMPANY,                        **JURY TRIAL DEMANDED**

17               Defendant.

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

FIRST AMENDED COMPLAINT

This suit concerns the refusal by Defendant United National Insurance Company ("United National"), to comply with its obligations to Plaintiffs L.A. Terminals, Inc. ("LAT") and Soco West, Inc. ("Soco" and, collectively with LAT, the "Plaintiffs") in accordance with the terms of a series of insurance policies issued by United National that provide coverage to Plaintiffs.  For the causes of action against United National, Plaintiffs allege as follows:

## THE PARTIES

1. At all pertinent times, Plaintiff LAT was a corporation formed and existing under the laws of the State of California, and Plaintiff Soco, which is the successor in interest to Holchem, Inc. ("Holchem"), was a corporation formed and existing under the laws of the State of Delaware.

2. Plaintiffs are informed and believe and thereupon allege that, at all pertinent times herein, defendant United National was a corporation formed and existing under the laws of the State of Pennsylvania, and was admitted and authorized to transact insurance business in California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds the sum of $75,000.

4. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and property at issue in the underlying lawsuit, which gives rise to this insurance dispute, occurred in this judicial district.

## THE UNITED NATIONAL POLICIES

5. Between April 1, 1982 and October 1, 1985, United National issued a series of four policies providing primary comprehensive general liability coverage to Plaintiffs:  GA81118, GA81138, GA81186, and GA502997 (the "United National Policies").  True and correct documentation of the United National

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

1

FIRST AMENDED COMPLAINT

1 | Policies is attached hereto as Exhibits 1-4.

2 |      6.    The United National Policies provide that United National "will pay

3 | on behalf of the insured all sums which the insured shall become legally obligated

4 | to pay as damages because of bodily injury or property damage to which this

5 | policy applies, caused by an occurrence . . . ."

6 |      7.    The United National Policies further provide that United National

7 | "shall have the right and duty to defend any suit against the insured seeking

8 | damages on account of such bodily injury or property damage . . . ."

9 |      8.    The United National Policies define "property damage" as "physical

10 | injury to or destruction of tangible property."

11 |      9.    The United National Policies define "occurrence," in pertinent part, as

12 | "an accident, including continuous or repeated exposure to substantially the same

13 | general conditions, which results in bodily injury or property damage neither

14 | expected nor intended from the standpoint of the insured."

15 | **THE UNDERLYING ACTIONS**

16 |      10.    The City of Los Angeles (the "City") owns an approximately .74 acre

17 | narrow piece of property located at 560 Pier "A" Place, Wilmington, CA (the

18 | "Sliver Site"), and the surrounding  13.5 acre property known as the "Los Angeles

19 | Marine Terminal Berths 148-151," currently operated by Phillips 66 Company, and

20 | generally known as the "Los Angeles Refinery, Marine Terminal."

21 |      11.    LAT is a former tenant of the City and Port of Los Angeles, with LAT

22 | having previously operated on the Sliver Site from approximately 1982 to 1992.

23 |      12.    The Sliver Site and surrounding areas within the Los Angeles Marine

24 | Terminal have been the subject of various environmental investigations for

25 | approximately 30 years.  These include over 25 subsurface investigations, 49

26 | groundwater monitoring tests, multiple dewatering/groundwater recovery wells, 62

27 | sediment samples, 32 seawater samples and 10 benthic samples to evaluate

28 | potential discharge to ocean, 41 CPT wells with laser-induced fluorescence, 6 CPT

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

2

FIRST AMENDED COMPLAINT

1   with LIF and MIP samples, hundreds of soil and groundwater samples, 66 soil

2   vapor, crawlspace, indoor air, and outdoor air sampling locations, numerous slug

3   tests, recovery tests, and pumping tests, multiple tidal influence evaluations,

4   extensive and varied pilot testing of different remedial technologies to evaluate

5   their feasibility for implementation, and extensive groundwater pilot studies for

6   HVOCs using 8 injection wells and 2 groundwater monitoring wells.

7        13.   On January 22, 2018, the City filed a complaint in Los Angeles

8   Superior Court against LAT, which Complaint was amended and thereafter served

9   on LAT on March 6, 2018 (Los Angeles Superior Court, Case No. NC061591, the

10  "Underlying State Court Action").  The lawsuit asserts thirteen causes of action,

11  alleging that LAT is responsible for the release of hazardous substances related to

12  its operations at the Sliver Site, which allegedly resulted in contamination to the

13  environment.  The City seeks damages totaling at least $48 million.

14       14.   The City's claims in the Underlying State Court Action all focus on

15  the alleged  "presence of elevated and hazardous substances including, but not

16  limited to, volatile organic compounds (VOCs), halogenated volatile organic

17  compounds ("HVOCs"), light non-aqueous phase liquid plumes, dense non-

18  aqueous phase liquid plumes, dissolved halogenated volatile organic compounds,

19  tetrachloroethene (PCE), trichloroethene (TCE), 1,1,1-trichloroethene, 1,1,1-

20  trichloroehane (1,1,1-TCA), 1,1- dichloroethene (1,1-DCE) cis-1,2-DCE, trans-1,2

21  DCB, 1,1-dichloroethane (1, 1-DCA) 1,2 DCA, vinyl chloride (VC), methylene

22  chloride, dissolved petroleum hydrocarbons, total petroleum hydrocarbons (TPH),

23  methyl tert-butyl ether (MTBE) and benzene, and others, in the soil, sediments,

24  and groundwater at, on, and near the Site premises."

25       15.   The City generally alleges that LAT (among other parties) is broadly

26  responsible for this ongoing contamination through the period of LAT's historic

27  operations at the Sliver Site.

28       16.   The Underlying State Court Action demands that LAT (among other

1    parties) reimburse the City for its investigation and related cleanup costs incurred

2    to date,  and pay for the City's future response costs or otherwise perform the

3    required investigation and remediation at LAT's expense.  The City also seeks

4    other damages, including loss of use damages and diminution in property value

5    damages.

6              17.    LAT's operations at the Sliver Site were limited to chemical storage

7    and distribution, including storing and distributing an HVOC chemical known as

8    1,1,1 trichloroethane ("1,1,1 TCA" or "TCA").  TCA and other stored chemicals

9    were valuable products to LAT.  Therefore, LAT did not intend for any of the

10   chemicals it stored and distributed at the Sliver Site to be discharged or released

11   into the environment.

12             18.    To the extent any hazardous substances were discharged or released

13   by LAT during its operations on the Sliver Site, all such discharges or releases

14   were unintentional, accidental, and unexpected.

15             19.    LAT disputes the City's allegations in the Underlying State Court

16   Action and contends that the City and other third parties associated with the Sliver

17   Site—including, but potentially not limited to, Occidental Chemical Corporation

18   ("Occidental"), Hooker Chemical Company, Phillips 66 Company, Union Oil

19   Company of California, Inc., and the City—are liable for the alleged contamination

20   at issue in the Underlying State Court Action.  As part of LAT's strategy for

21   defending the Underlying State Court Action, LAT filed a cross-complaint and

22   other claims against those parties seeking LAT's own cost recovery, contribution,

23   indemnity, and declaratory relief.

24             20.    As part of that same overall defense strategy, on August 6, 2018, LAT

25   initiated a separate federal action to ensure it could maintain claims for response

26   costs and contribution arising under the Comprehensive Environmental Response,

27   Compensation and Liability Act ("CERCLA" – 42 U.S.C. § 9601 et seq.) against

28   the City and the other potentially responsible third parties (United States District

1  Court, Central District of California Case No. 2:18-cv-6754-CAS-RAO) (the

2  "Underlying Federal Court Action").[1]

3      21.    On December 5, 2018, the City and Occidental filed counterclaims

4  against LAT for, among other claims, contribution and declaratory relief.  On

5  December 19, 2018, the City and Occidental filed third party complaints against

6  Soco and Holchem for, among other claims, contribution and declaratory relief.[2]

7  On March 8, 2019, Third-Party Defendant Union Pacific Railroad Company

8  ("Union Pacific") filed a Third-Party Complaint in the Underlying Federal Court

9  Action against LAT, Soco and Holchem.

10      22.    The City, Occidental, and Union Pacific's allegations in their

11 respective counterclaims and third party complaints in the Underlying Federal

12 Court Action address the same set of facts and largely mirror those from the

13 Underlying State Court Action.

14      23.    In particular, Occidental alleges in pleadings in the Underlying

15 Federal Court Action that the alleged contamination at issue was caused, "in whole

16 or in part, by one or more releases of hazardous materials, including sudden and

17 accidental releases, occurring during LAT's tenancy and operations on the Sliver

18 Area." *See, e.g.*, ¶ 19 of Occidental's Counterclaim Against LAT, dated Dec. 5,

19 2018 [Dkt. 37 of Underlying Federal Court Action]; ¶ 30 of Occidental's Third

20 Party Complaint Against Holchem and Soco, dated Dec. 19, 2018 [Dkt. 45 of

---

[1]  Such federal claims for contribution and recovery of response costs could only be filed in federal court, because under CERCLA, 42 U.S.C. § 9613(b), the federal courts have exclusive jurisdiction over such claims.  Pursuant to CERCLA, cleanups must proceed according to the National Contingency Plan ("NCP"), promulgated as Section 300 et seq. of Title 40 of the Code of Federal Regulations, which requires that remedial activity follow a carefully prescribed process that often includes highly complex investigative activities that can take years to complete.

[2]  The City has since dismissed Holchem from its Third-Party Complaint, in light of the fact that Holchem  merged into Brenntag West, Inc. in the early 2000s (Brenntag West, Inc. subsequently changed its name to Soco), and that Holchem is thus no longer a corporation that can sue or be sued.  Also, Plaintiffs anticipate that the City and Occidental will amend their pleadings in the Underlying State Court Action to assert comparable causes of action against Soco and LAT (Occidental has yet to file a cross-complaint in the Underlying State Court Action, but is expected to do so).

1    Underlying Federal Court Action].  Similarly, Union Pacific alleges that "sudden

2    and accidental discharges" caused or contributed to the presence and migration of

3    alleged hazardous substances at issue in the Underlying Actions.  *See, e.g.,* ¶¶ 45-

4    46 of Union Pacific's Counterclaims and Crossclaims, dated Mar. 8, 2019 [Dkt. 92

5    of Underlying Federal Court Action].

6          24.    Plaintiffs have taken, and continue to take, reasonable and appropriate

7    actions to defend the Underlying State Court Action and the Underlying Federal

8    Court Action (together, the "Underlying Actions"), including hiring independent

9    defense counsel and environmental consultants.  Plaintiffs have incurred over

10   $400,000 in defense costs (which amount includes environmental consulting/expert

11   fees and costs), and will continue to incur defense costs in connection with the

12   Underlying Actions.

13   **PLAINTIFFS' TENDER OF THE UNDERLYING ACTIONS AND UNITED**

14   **NATIONAL'S REFUSAL TO HONOR ITS DEFENSE OBLIGATIONS**

15         25.    LAT tendered its defense of the Underlying State Court Action to

16   United National on May 4, 2018, seeking confirmation that United National would

17   defend LAT and reimburse its legal and environmental consultant defense

18   expenditures.  Given United National's broad duty to defend under the United

19   National Policies and well-established California law, United National should have

20   promptly acknowledged its defense obligations in connection with the claim.

21         26.    Instead, on August 6, 2018, United National "disclaim[ed] any duty to

22   defend or indemnify" LAT in connection with the Underlying State Court Action.

23   United National denies its duty to defend LAT, erroneously insisting that,

24   notwithstanding the broad allegations against LAT, the Underlying State Court

25   Action does not raise any potential for liability that could be covered by the United

26   National Policies.

27         27.    United National based its denial on a single exclusion in the United

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

FIRST AMENDED COMPLAINT

National Policies[3] – the so-called "qualified pollution exclusion."  This exclusion provides in relevant part: "this insurance does not apply: to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; ***but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental***." (emphasis added).

28.    United National contends that "all of the allegations in the City of Los Angeles complaint fall within the [qualified pollution] exclusion in the first instance, but none of the allegations touch on the exclusion's exception for pollution caused by a 'sudden and accidental' release or escape of contaminants or pollutants."  In letters to LAT dated August 6, 2018 and September 7, 2018, United National wrongly insists that the burden is on LAT at this stage to come forward with facts "indicating that any sudden and accidental release occurred" at the Sliver Site.

29.    Plaintiffs similarly tendered their defense of the Underlying Federal Court Action on February 15, 2019.  United National has given no indication that it will comply with its defense obligations for the Underlying Federal Court Action, while it continues to deny all obligations in connection with the Underlying State Court Action.

30.    United National's denial turns well-established California law on its head.  To comply with its broad duty to defend, United National was required to compare (1) the broad generalized allegations of the City's underlying complaint and the allegations of sudden and accidental releases in Occidental's underlying pleadings with (2) the language of the United National Policies.  If this

---

[3]    United National claimed to reserve the right to assert additional defenses at a later date.

1  examination reveals any *possibility* that Plaintiffs could be covered for any of the

2  alleged claims in the Underlying Actions, United National has an *unequivocal*,

3  *present duty* to provide a full and prompt defense.  *See Scottsdale Ins. Co. v. MV*

4  *Transp.*, 36 Cal. 4th 643, 664 (2005).

5       31.    As the California Supreme Court has made clear, "[t]o prevail [on the

6  duty to defend], the insured must prove the existence of a potential for coverage,

7  while the insurer must establish the absence of any such potential.  In other words,

8  the insured need only show that the underlying claim may fall within policy

9  coverage; the insurer must prove it cannot."  *See Montrose Chem. Corp. v. Super.*

10  *Ct.*, 6 Cal. 4th 290, 300 (1993).

11       32.    United National is obligated to defend Plaintiffs unless and until the

12  insurer can *prove*, through undisputed evidence, that it has no duty to indemnify

13  Plaintiffs under any possible scenario.  The relevant inquiry is not whether the City

14  or other parties specifically alleged an identifiable accident in the Underlying

15  Actions, but whether the claims as pled could *potentially* be covered.  However,

16  United National's claim denial improperly shifts the burden to Plaintiffs to come

17  forward with facts and evidence showing specific moments in time or unexpected

18  events to prove coverage at this early stage of the Underlying Actions.

19       33.    United National's conduct plainly violates long established California

20  law concerning a liability insurer's duty to defend.  The allegations in the

21  Underlying Actions are sufficiently broad to raise the potential that some of the

22  alleged contamination was caused by a discharge, dispersal, release or escape that

23  was sudden or accidental.  Indeed, Occidental alleges in its pleadings that the

24  alleged contamination at issue was caused, in whole or in part, by one or more

25  releases of hazardous materials, including sudden and accidental releases.  Without

26  conclusive evidence demonstrating that the qualified pollution exclusion applies

27  (*i.e.*, that not a single "sudden and accidental" release contributed to the alleged

28  contamination or pollution), United National should have provided Plaintiffs with

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

8

FIRST AMENDED COMPLAINT

1    an immediate, full, and complete defense.

2         34.    United National's refusal to provide that defense constitutes a breach

3    of its duty to defend. *See, e.g., Buss v. Super. Ct.*, 16 Cal. 4th 35, 49 (1997) ("To

4    defend meaningfully, the insurer must defend immediately.  To defend

5    immediately, it must defend entirely.")

6         35.    Indeed, even Granite State, the insurer that provides excess coverage

7    above certain of the United National Policies, disagrees with United National's

8    wrongful denial of its defense obligation.  In an August 16, 2018 letter (a true and

9    correct copy is attached hereto as Exhibit 5), Granite State wrote: "United National

10   denied defense on the grounds that the pollution exclusion precluded coverage …

11   *We respectfully disagree with United National's position* … *we do not believe*

12   *that United National has grounds to deny a duty to defend*."  (emphasis added).

13        36.    Although the Granite State policy has *the same qualified pollution*

14   *exclusion* as the one contained in the United National Policies, Granite State

15   agreed to provide LAT with a defense in the Underlying State Court Action,

16   subject to a reservation of rights.  However, Granite State's supplemental defense

17   obligation is limited to situations when the underlying insurer (here, United

18   National) does not defend.  Importantly, Granite State has taken the position that

19   any payment it makes for defense expenses will "erode" the Granite State policy

20   limits.  Because defense payments do not erode the coverage limits in the United

21   National Policies, it would greatly prejudice Plaintiffs to accept payments from an

22   excess carrier, Granite State, when the primary carrier, United National, should pay

23   the defense costs.

24        37.    Accordingly, Plaintiffs are entitled to enforce their right to obtain an

25   immediate and complete defense from United National—the insurer plainly

26   responsible to defend the Underlying Actions in the first instance.

27        38.    United National was required to conduct a reasonable, fair, and even-

28   handed evaluation of Plaintiffs' claim for coverage.  However, in conscious

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

9

FIRST AMENDED COMPLAINT

1    disregard of Plaintiffs' rights, United National has flouted controlling law and

2    refused to defend Plaintiffs with respect to the Underlying Actions.

3        39.    United National has unreasonably deprived Plaintiffs of insurance

4    benefits to which they are entitled by purposefully (i) failing to give at least equal

5    regard to Plaintiffs' interests in a complete defense as United National did to its

6    own interest in attempting to avoid the cost of fulfilling this obligation, and (ii)

7    disregarding its obligation to refrain from doing anything that would frustrate the

8    agreed upon purposes of the United National Policies.

9        40.    A reasonable insurer presented with Plaintiffs' claim for defense of

10    the Underlying Actions would have agreed to defend Plaintiffs subject to a

11    reservation of rights, but United National has wrongfully refused to honor its

12    obligations to Plaintiffs.  United National's unreasonable conduct has forced

13    Plaintiffs to litigate in order to vindicate their right to an immediate and full

14    defense.

15        41.    In addition to the unreasonable conduct described above, Plaintiffs are

16    informed and believe and thereupon allege that United National may have further

17    breached its duty of fair dealing and good faith by other acts or omissions that

18    Plaintiffs have not yet discovered.

19                      **FIRST CAUSE OF ACTION**

20                    **(Breach of the Duty to Defend)**

21        42.    Plaintiffs incorporate by reference herein paragraphs 1 through 41

22    inclusive.

23        43.    Plaintiffs have timely performed all conditions required under the

24    United National Policies.

25        44.    United National has breached its obligations under the United

26    National Policies by refusing to timely and fully defend Plaintiffs against the

27    claims asserted in the Underlying Actions.

28        45.    United National has also breached its obligations under the United

1   National Policies by refusing to defend unless and until Plaintiffs prove that "a

2   sudden and accidental release of contaminants or pollutants occurred," when the

3   allegations in the Underlying Actions are sufficiently broad to raise the potential

4   for coverage, thereby depriving Plaintiffs of the peace of mind and security of the

5   defense that should have been provided under the United National Policies.

6          46.    As a direct and proximate result of United National's breach of its

7   obligations to defend, Plaintiffs have sustained losses, including reasonable

8   attorneys' fees and costs, environmental consultant and expert fees, costs and

9   expenses, and other costs that Plaintiffs have incurred and will continue to incur in

10  defending the claims associated with the Underlying Actions.  To date, these

11  amounts total more than approximately $400,000.

12                          **SECOND CAUSE OF ACTION**

13                     **(Declaratory Relief:  Duty to Defend)**

14         47.    Plaintiffs incorporate by reference herein paragraphs 1 through 46,

15  inclusive.

16         48.    An actual controversy presently exists between Plaintiffs and United

17  National regarding United National's ongoing duties to Plaintiffs with respect to

18  the Underlying Actions.

19         49.    The claims alleged in the Underlying Actions give rise to a potential

20  for coverage under the terms of the United National Policies.  Therefore, United

21  National is obligated to defend Plaintiffs against the Underlying Actions, and to

22  reimburse Plaintiffs for all expenses incurred in connection with the investigation,

23  negotiation, settlement and defense of the Underlying Actions.

24         50.    Plaintiffs are informed and believe and thereupon allege that United

25  National contends that it is not obligated to defend Plaintiffs or reimburse costs

26  that Plaintiffs incur defending against the Underlying Actions.

27         51.    Plaintiffs desire a judicial determination and declaration that United

28  National is obligated to provide Plaintiffs with an immediate, full, and complete

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

FIRST AMENDED COMPLAINT

1  defense against the Underlying Actions.  A judicial declaration of United

2  National's ongoing duty to defend Plaintiffs is necessary and appropriate at this

3  time because Plaintiffs are actively defending themselves against the Underlying

4  Action and have incurred substantial legal fees.

### THIRD CAUSE OF ACTION

**(Breach of the Covenant of Good Faith and Fair Dealing)**

7    52.    Plaintiffs incorporate by reference herein paragraphs 1 through 51,

8  inclusive.

9    53.    The United National Policies obligate United National to deal fairly

10 and in good faith with Plaintiffs in connection with their claim for defense of the

11 Underlying Actions.  Among other obligations, United National is required to

12 refrain from doing anything that would (i) frustrate the agreed upon purposes of the

13 United National Policies, (ii) injure Plaintiffs' right to receive the benefits of the

14 United National Policies, or (iii) fail to give at least equal regard to Plaintiffs'

15 interests in securing their coverage rights as United National has given to its own

16 interests in attempting to avoid that expense.

17    54.    United National has breached its duties by engaging in unreasonable

18 conduct, including without limitation the following:

19        a.    United National has wrongfully refused to defend Plaintiffs in

20 the Underlying Actions, even though United National has a clear duty to do so

21 pursuant to the United National Policies and California law;

22        b.    United National has flouted California law by wrongfully

23 refusing to defend unless Plaintiffs set forth evidence showing that "a sudden and

24 accidental release of contaminants or pollutants occurred" when the allegations in

25 the Underlying Actions are sufficiently broad—including Occidental's specific

26 allegations that the alleged contamination at issue was caused, "in whole or in part,

27 by one or more releases of hazardous materials, including sudden and accidental

28 releases"—to raise the potential that some portion of the alleged contamination

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

12

FIRST AMENDED COMPLAINT

1    was caused by a discharge, dispersal, release or escape that was sudden or

2    accidental;

3            c.    United National failed to properly investigate, evaluate, and

4    process Plaintiffs' insurance claims in a fair and even-handed manner consistent

5    with governing California law;

6            d.    United National has improperly given greater weight to its own

7    interest in avoiding its defense obligation than it accorded to Plaintiffs' interest in a

8    prompt and complete defense of the Underlying Actions; and

9            e.    United National has unreasonably exposed Plaintiffs to

10    significant damage and expense by forcing them to litigate to compel United

11    National to comply with its obligations under the United National Policies.

12        55.    As a proximate cause of United National's breach of its duty to deal

13    fairly and in good faith, Plaintiffs have incurred, and will continue to incur,

14    substantial damages including out-of-pocket expenses to vindicate their right to a

15    complete defense of the Underlying Actions (so-called "*Brandt* fees" under

16    California law), interest on the monies due from United National, and attorneys'

17    fees, costs, and interest thereon, the exact amount of which is yet to be determined.

18        56.    Plaintiffs are entitled to recover all damages proximately caused by or

19    attributed to United National's unreasonable conduct, the amount of which will be

20    proven at or before the time of trial.

21        WHEREFORE, Plaintiffs pray for judgment against United National

22    as follows:

23        1.    On the First Cause of Action:

24            a.    For an order declaring that United National has breached its

25    obligation to defend Plaintiffs against the claims asserted in the Underlying

26    Actions;

27            b.    For compensatory damages in an amount to be proven at trial,

28    including attorneys' fees, costs and expenses, and interest thereon; and

1          c.     For such other and further relief as the Court deems just and

2  proper.

3       2.     On the Second Cause of Action:

4          a.     For an order declaring that United National owes a duty under

5  the United National Policies to defend Plaintiffs against the Underlying Actions;

6  and

7          b.     For attorneys' fees and costs, and such other relief as the Court

8  deems just and proper.

9       3.     On the Third Cause of Action

10          a.     For an order declaring that United National has breached its

11  covenant of good faith and fair dealing owed to Plaintiffs under the United

12  National Policies;

13          b.     For compensatory damages in an amount to be proven at trial,

14  including attorneys' fees (*Brandt* fees), costs and expenses and interest thereon;

15  and

16          c.     For any such other relief as the Court deems just and proper.

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO

FIRST AMENDED COMPLAINT

1    DATED:     March 13, 2019        LATHAM & WATKINS LLP

2                                            Brook B. Roberts
                                             Steven Lesan

3

4

5                                By: /s/ Brook B. Roberts
                                      Brook B. Roberts

6                                 Attorneys for Plaintiffs
                                  L.A. Terminals, Inc. and Soco West,
                                  Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO

FIRST AMENDED COMPLAINT

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues triable.

DATED:     March 13, 2019               LATHAM & WATKINS LLP
                                        Brook B. Roberts
                                        Steven Lesan


                                        By: /s/ Brook B. Roberts
                                        Brook B. Roberts
                                        Attorneys for Plaintiffs
                                        L.A. Terminals, Inc. and Soco West,
                                        Inc.

LATHAM&WATKINS⊔⊔⊔
ATTORNEYS AT LAW
SAN DIEGO

16

FIRST AMENDED COMPLAINT