JAMES C. NIELSEN (111889)
  jnielsen@nielsenhaley.com
DANIEL N. KATIBAH (293251)
  dkatibah@nielsenhaley.com
NIELSEN, HALEY & ABBOTT LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone:  (415) 693-0900
Facsimile:  (415) 693-9674

Attorneys for Defendant
UNITED NATIONAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| L.A. TERMINALS, INC. and SOCO WEST, INC.,<br><br>         Plaintiffs,<br><br>   v.<br><br>UNITED NATIONAL INSURANCE COMPANY,<br><br>         Defendant. | Case No. 8:19-cv-00286-ODW-SS<br><br>**UNITED NATIONAL'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       June 24, 2019<br>Time:      1:30 p.m.<br>Courtroom:  5D – 5th Fl.<br><br>HON. OTIS D. WRIGHT II |

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE THAT on June 24, 2019, at 1:30 p.m., in

i

Courtroom 5D of the above-captioned Court, located on the 5th floor at 350 W. 1st Street, Los Angeles, CA 90012, the Honorable Otis D. Wright II, presiding, defendant United National Insurance Company will and hereby does move the Court for a summary judgment under Fed. R. Civ. P. Rule 56 declaring that United National is entitled to judgment as a matter of law in its favor as to every cause of action alleged against it in this lawsuit by plaintiffs L.A. Terminals, Inc. and Soco West, Inc., and that plaintiffs shall take nothing from United National.  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 2, 2019.

This motion is made on the ground that there is no genuine dispute of any material fact and that United National is entitled to judgment as a matter of law on all claims.  This motion is based upon this Notice of Motion and Motion for Summary Judgment, the accompanying Memorandum of Points and Authorities, the declarations (with exhibits) of Randi Hoffman and Daniel Katibah, United National's request for judicial notice, and United National's Separate Statement of Uncontroverted Facts and Conclusions of Law, all filed concurrently.

Respectfully submitted,

May 20, 2019                      NIELSEN, HALEY & ABBOTT LLP


By:      _/s/  Daniel N. Katibah_____
Daniel N. Katibah
Attorneys for Defendant
United National Insurance Company

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

# TABLE OF CONTENTS

Introduction                                                                                              1

Background                                                                                               2

    1.    The United National policies.                                      2

    2.    The underlying *City of Los Angeles* and *L.A. Terminals* lawsuits.                                                                                          3

    3.    United National initially declines to defend L.A. Terminals.                5

    4.    L.A. Terminals and Soco West tender new facts and claims, and United National agrees to defend.                                                 8

    5.    This lawsuit.                                                             9

Argument                                                                                                10

    1.    Summary judgment standard.                                            10

    2.    United National's initial declination to defend the *City of Los Angeles* action was proper because the City sued L.A. Terminals for pollution-caused damage attributed to five decades of day-to-day, routine business operations.                        10

    3.    Assuming Occidental's *L.A. Terminals* counterclaim and third-party complaint created a duty to defend, United National extinguished the duty by agreeing to defend plaintiffs.                                                          17

    4.    United National cannot be liable for breaching the implied covenant of good faith and fair dealing as a matter of law.           19

Conclusion                                                                                              25

# TABLE OF AUTHORITIES

## CASES

*A-H Plating, Inc. v. American Nat'l Fire Ins. Co.*
   57 Cal.App.4th 427 (1997) ............................................................... 16

*ACL Technologies, Inc. v. Northbrook Prop. & Cas. Co.*
   17 Cal.App.4th 1773 (1993) ............................................................. 12

*American States Ins. Co. v. Progressive Cas. Ins. Co.*
   180 Cal.App.4th 18 (2009) ............................................................... 22

*American States Ins. Co. v. Sacramento Plating, Inc.*
   861 F.Sup..964 (E.D. Cal. 1994) ........................................... 11, 14-17

*Austero v. National Cas. Co.*
   84 Cal.App.3d 1 (1978) ............................................................... 22-23

*Aydin Corp. v. First State Ins. Co.*
   18 Cal.4th 1183 (1998) ..................................................................... 14

*Buss v. Sup. Ct.*
   16 Cal.4th 35 (1997) ......................................................................... 18

*Careau v. Sec. Pac. Bus. Credit, Inc.*
   222 Cal.App.3d 1371 (1990) ............................................................. 20

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*
   90 Cal.App.4th 335 (2001) ............................................................... 24

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) .......................................................................... 10

*Egan v. Mutual of Omaha Ins. Co.*
   24 Cal.3d 809 (1979) ........................................................................ 23

*Faust v. The Travelers*
   55 F.3d 471 (9th Cir. 1995) .............................................................. 17

iv

*Gaylord v. Nationwide Mut. Ins. Co.*
    776 F.Supp.2d 1101 (E.D. Cal. 2011)                              21-22, 24

*Guebara v. Allstate Ins. Co.*
    237 F.3d 987 (9th Cir. 2001)                                      19, 23

*Gunderson v. Fire Ins. Exch.*
    37 Cal.App.4th 1106 (1995)                                           14

*Healy Tibbitts Constr. Co. v. Foremost Ins. Co.*
    482 F.Supp.830 (N.D. Cal. 1979)                                      18

*Love v. Fire Ins. Exch.*
    221 Cal.App.3d 1136 (1990)                                           20

*Lunsford v. American Guar. & Liab. Ins. Co.*
    18 F.3d 653 (9th Cir. 1994)                                          23

*Morris v. Paul Revere Life Ins. Co.*
    109 Cal.App.4th 966 (2003)                                           20

*Montano v. City of South Gate*
    13 Cal.App.3d 446 (1970)                                             18

*Olympic Club v. Underwriters at Lloyd's London*
    991 F.2d 497 (9th Cir. 1993)                                         14

*Scottsdale Ins. Co. v. MV Transportation*
    36 Cal.4th 643 (2005)                                             11-12

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*
    78 Cal.App.4th 847 (2000)                                            22

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*
    12 Cal.App.4th 715 (1993)                                       12-13, 16

*State of California v. Allstate Ins. Co.*
    45 Cal.4th 1008 (2009)                                          11-12, 14

v

*Upper Deck Co. v. Fed. Ins. Co.*
  358 F.3d 608 (9th Cir. 2004)                                    12, 14-15

*Vann v. Travelers Cos.*
  39 Cal.App.4th 1610 (1995)                                              13

*Venoco, Inc. v. Gulf Underwriters Ins. Co.*
  175 Cal.App.4th 750 (2009)                                             16

*Waller v. Truck Ins. Exch.*
  11 Cal.4th 1 (1995)                                                    20

*Wilson v. 21st Century Ins. Co.*
  42 Cal.4th 713 (2007)                                                  24

**STATUTES & RULES**

California Civil Code § 1485                                             18

California Civil Code § 1494                                             18

Federal Rule of Civil Procedure 56                                      10

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF
POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Starting in the mid-1940s, various companies continuously operated chemical storage and transportation facilities centered around a small piece of land at the Port of Los Angeles.  The last entity to operate there, L.A. Terminals, Inc., bought four consecutive policies of general-liability insurance from United National Insurance Company effective during the earliest years of its tenancy (1982-1985).  Starting in the 1990s, the City of Los Angeles discovered contamination in and around the site.  In 2018, the City sued every prior company that operated in the area, claiming that their businesses had continually caused toxic chemicals to bleed into the surrounding soils and waters for fifty years.  When L.A. Terminals demanded a defense, United National declined because its policies all contain an exclusion barring coverage for property damage caused by the release or discharge of "contaminants" and "pollutants."  Though the exclusion also contains an exception for "sudden and accidental" releases of pollutants, United National explained to L.A. Terminals that the exception did not apply because the City's suit alleged only gradual, long-term pollution caused by the various companies' day-to-day business operations over five decades.  But United National invited L.A. Terminals to provide evidence of sudden releases and request reconsideration.

L.A. Terminals never responded to the invitation.  Months later, however, after filing a federal lawsuit of its own against the City, L.A. Terminals tendered various counterclaims (which were filed months earlier) and also demanded United National reconsider its disclaimer as to the City's lawsuit.  L.A. Terminals was joined in this demand by a new entity, Soco West, Inc., which was named as a third-party defendant in L.A. Terminals' federal suit and claimed to be an insured under United National's policies.  United National acknowledged both tenders and investigated.  Because the counterclaims and third-party complaints specifically alleged that L.A. Terminals and Soco West were liable for "sudden and accidental"

releases, United National agreed to defend under reservation of rights. And because the new pleadings centered on the same pollution alleged in the City's complaint, United National likewise agreed to withdraw its earlier disclaimer and to defend L.A. Terminals in the City's suit. United National retained counsel to defend both entities against every tendered proceeding.

Unsatisfied, L.A. Terminals has sued United National seeking declaratory judgment and damages for alleged breach of contract (the duty to defend) and breach of the covenant of good faith and fair dealing. Remarkably, it is joined in every cause of action by Soco West, despite United National having accepting Soco West's first and only tender.

United National now moves for summary judgment on all causes of action. On the duty defend, summary judgment is appropriate for two reasons. First, United National's initial disclaimer of the City's lawsuit was proper because the facts available at that time showed only that L.A. Terminals was sued for the type of gradual, long-term pollution courts have long said is not "sudden and accidental." Second, United National promptly accepted the later tenders and appointed counsel, which is all the duty to defend requires an insurer to do. Thus, because United National has fulfilled its contractual obligation and because the evidence shows its claim handling was reasonable at every step, United National cannot be liable for bad faith as a matter of law. United National is entitled to summary judgment.

## BACKGROUND

**1.    The United National policies.**

United National issued four consecutive policies of commercial general liability insurance to "Marken Enterprises, Inc." as first named insured, collectively effective from April 1, 1982 to October 1, 1985. (Statement of Uncontroverted Facts [UF], Fact No. 1.) Each policy is modified by a "Named Insured Endorsement" making various additional organizations a named insured, including

"L.A. Terminals, Inc." (UF No. 2.)

The policies first state that United National "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of … property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such … property damage …." (UF No. 3.)  The policies define "property damage" as "physical injury to or destruction of tangible property," and define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general conditions, which results in … property damage neither expected nor intended from the standpoint of the insured."  (UF No. 4.)

To explain when "[t]his insurance does not apply," the policies contain a list of "Exclusions" appearing after the general insuring agreement.  (UF No. 5.)  One of them, exclusion (f), generally removes from coverage any property damage "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."  (UF No. 5.)

**2.**     **The underlying *City of Los Angeles* and *L.A. Terminals* lawsuits.**

In January 2018, the City of Los Angeles sued numerous parties, including L.A. Terminals (but not Soco West), in a lawsuit alleging contamination and pollution at the Port of Los Angeles.  (*City of Los Angeles v. L.A. Terminals, Inc.*, Los Angeles Superior Court No. NC061591.)  The allegations discussed below are from the City's First Amended Complaint, filed on March 2, 2018, and attached Exhibit 1 to United National's request for judicial notice.

The *City of Los Angeles* complaint generally alleges that, from 1947-1994, a parcel about ¾ of an acre owned by the City in the Harbor District was used by

various business entities, including by L.A. Terminals, which did so from July 1982 to April 1994.  (UF Nos. 10-11.)  Like the entities before it (which also used adjacent areas), L.A. Terminals allegedly used the site "for the maintenance and operation of a marine chemical terminal and storage facility, and purposes incidental thereto."  (UF No. 12.)  To conduct these operations, L.A. Terminals and the preceding entities "provided, handled and stored a variety of toxic and hazardous chemicals at the Site premises."  (UF No. 13.)  This "marine chemical terminal and storage facility … involved transportation of certain hazardous materials … that leaked from storage tanks, pipes, spilled or were disposed of on the ground, into the soil and seeped into the groundwater."  (UF No. 14.)

In recent years, "[t]he City and others" allegedly "conducted investigations of the soil, sediments, and groundwater at the Site … to assess environmental conditions."  (UF No. 15.)  The "investigations revealed deficient hazardous waste materials management and demonstrated the presence of elevated and hazardous substances … in the soil, sediments, and groundwater at, on, and near the Site premises." (UF No. 15.)  Thus, the City alleges that the continuing "marine chemical terminal, storage and handling operations conducted by" all defendants during their "multi-decades long tenancy at the Site … are responsible for the soil, sediment, and groundwater pollution and contamination at, on, and near the Site premises."  (UF No. 16.)  It is further alleged that "the deposit or releases of hazardous substances onto and into the soil, sediment, and groundwater" has been ongoing "[s]ince 1947." (UF No. 17.)  The City claims to have sustained "at least $48,000" in damages.  (UF No. 18.)

Based on these allegations, the City sued L.A. Terminals and the other defendants on causes of action for Negligence, Private Nuisance, Public Nuisance, Contribution under Civil Code § 1432, Declaratory Relief, Contribution or Indemnity Pursuant to the Hazardous Substance Account Act, Declaratory Relief Pursuant to the Hazardous Substance Account Act, Contribution or Indemnity

Pursuant to the Porter-Cologne Act, Declaratory Relief Pursuant to the Porter-Cologne Act, Negligence Per Se, Trespass, Express Contractual Indemnity, and Breach of Contract.

On August 10, 2018, L.A. Terminals filed a cross-complaint against the City, generally contending that the City and other third parties are liable for the pollution and contamination alleged in the City's pleadings.  (UF No. 30.)  Among other things, the cross-complaint alleges that the contested pollution "was caused by various sudden and accidental releases" of the "hazardous materials" discussed in the main complaint. (UF No. 31.)  In the amended complaint in this insurance lawsuit (discussed in more detail below), L.A. Terminals claims it so cross-complained "[a]s part of" its "strategy for defending" the *City of Los Angeles* action.  (UF NO. 30; ECF No. 14, ¶ 19.)

A few days earlier, August 6th, L.A. Terminals also filed an original action in the Central District of California captioned *L.A. Terminals, Inc. v. City of Los Angeles*, et al., No. 2:18-cv-06754-MWF-RAO, which we call the *L.A. Terminals* lawsuit.  (UF No. 32.)  Like the cross-complaint, the *L.A. Terminals* matter is premised on the same environmental contamination alleged in the *City of Los Angeles* case, alleges that the City and another party, Occidental Chemical Corporation, are the true responsible parties, and claims that the contested pollution "was caused by various sudden and accidental releases" of numerous chemicals and other materials.  (UF Nos. 33-34.)  L.A. Terminals claims in its amended complaint here that, like with the cross-complaint, it initiated the *L.A. Terminals* suit as "part of that same overall defense strategy" against the main *City of Los Angeles* claims. (UF No. 33; ECF No. 14, ¶ 20.)

**3.     United National initially declines to defend L.A. Terminals.**

On May 4, 2018, L.A. Terminals sent United National a letter asking it to defend the *City of Los Angeles* action.  (UF No. 6.)  On May 17, 2018, United National Claim Director Patrick Greeley discussed the tender in a phone

conversation with L.A. Terminals' counsel, Richard Montevideo, and United National opened a claim file the next day.  (UF Nos. 7-8.)  Randi Hoffman, a Senior Environmental Attorney with United National assigned to handle the claim, further discussed the tender and *City of Los Angeles* allegations with Mr. Montevideo in a June 1, 2018, phone call.  (UF No. 9.)  On July 17, 2018, Ms. Hoffman left Mr. Montevideo a phone message.  (UF No. 19.)  On July 19, 2018, United National assigned the claim to outside coverage counsel, who discussed the claim with Mr. Montevideo on July 19 and 20, 2018.  (UF Nos. 20-21.)

By letter dated August 6, 2018, United National wrote back and declined to defend L.A. Terminals in the *City of Los Angeles* suit.  (UF No. 22.)  As the letter described, the City's complaint "alleges liability against L.A. Terminals and the other defendants solely due to the" alleged chemical storage and pipeline operations "which resulted in alleged pollution and contamination of the groundwater at the site over the course of five decades," and specifically pointed to the complaint's allegation that the various defendants' business operations over the course of their "multi-decades long tenancy at the site … are responsible for the" pollution and contamination.  (UF No. 25.)

Thus, the letter first explained, any alleged property damage in the City's complaint "was caused by the discharge, dispersal, release, and/or escape of chemicals, materials or other pollutants within the meaning of the pollution exclusion contained in each policy."  (UF No. 23.)  The letter also noted that "the complaint does not allege that any of these discharges, dispersals, releases or escapes were 'sudden and accidental,' but instead alleged "continuous, long-term pollution damage arising from the day-to-day business operations of various companies, including L.A. Terminals, for about fifty years."  (UF No. 24.)  Because of this, and because "United National has not been notified of any facts outside of the complaint which indicate that any 'sudden and accidental' release occurred," the letter explained that coverage for the suit "appears barred by the

pollution exclusion in each policy."  (UF No. 25.)

Still, the letter invited L.A. Terminals to "provide [United National] with facts, documents or legal reasoning showing that the *City of Los Angeles* action potentially seeks damages covered by the United National policies, including property-damage claims based on pollution not subject to the qualified pollution exclusion.  Please submit to us any such facts, documents and/or legal reasoning that you wish United National to consider at your earliest convenience."  (UF No. 26.)

Ms. Hoffman sent the letter as an attachment to an email in which she stated, just like the letter did, that "if you," meaning L.A. Terminals or its counsel, "have any additional information [for United National] to review, please forward it to my attention" because United National "will reevaluate our coverage position at any time based on receipt of new or additional information."  (UF No. 28.)  Likewise, the letter itself advised L.A. Terminals "to contact" Ms. Hoffman "if you believe any of the information contained herein is inaccurate or should be supplemented in any way," and explained that "[s]hould you have any documents or any other information that you believe would aid us in the further evaluation of this matter, please forward them immediately to the undersigned."  (UF No. 27.)

L.A. Terminals never responded.  (UF No. 29.)  So United National, again through Ms. Hoffman, sent a follow-up letter to L.A. Terminals on September 7, 2018.  (UF No. 35.)  As this second letter explained, United National "was recently made aware of both" L.A. Terminals' cross-complaint in the *City of Los Angeles* case and the *L.A. Terminals* action in federal court.  The letter noted that, "[c]ontrary to the allegations in the original *City of Los Angeles* complaint," L.A. Terminals' pleadings "repeatedly allege without explication that the pollution at issue was indeed caused and contributed to by 'sudden and accidental' releases or spills of hazardous materials and chemicals."  (UF No. 35.)  Thus, the letter "once again invite[d]" L.A. Terminals "to provide us with any and all facts and evidence

supporting the 'sudden and accidental' allegations made in" the pleadings filed by L.A. Terminals.  (UF No. 35.)  As before, L.A. Terminals never responded.  (UF No. 36.)  Instead, four months later, it filed this lawsuit.  (UF No. 37.)

**4.   L.A. Terminals and Soco West tender new facts and claims, and United National agrees to defend.**

On February 15, 2019, a month after filing this lawsuit, counsel for L.A. Terminals sent a letter to United National's counsel of record stating that L.A. Terminals and Soco West (the first mention of the latter entity to United National) "have been named as counter-defendants and/or third party defendants in the" *L.A. Terminals* federal lawsuit and tendering the pleadings for defense.  (UF Nos. 38-39.)  United National promptly acknowledged the tender.  (UF No. 42.)

The pleadings were four documents filed in the federal *L.A. Terminals* case: two counterclaims filed by the City and by Occidental against L.A. Terminals, both on December 5, 2018, and two third-party complaints against Soco West, among others, filed by the same parties on December 19, 2018, and January 2, 2019.  (UF Nos. 38-39.)  Each pleading, like the *L.A. Terminals* complaint, centered on the disputed pollution first raised in the *City of Los Angeles* matter.  (First Amended Complaint, ECF No. 14, ¶ 22.)  Both of Occidental's pleadings specifically allege that the "contamination was caused, in whole or in part, by one or more releases of hazardous materials, including sudden and accidental releases."  (UF Nos. 40-41.)

On April 12, 2019, United National agreed to defend Soco West against both third-party complaints, conditioned on Soco West submitting additional documentation confirming its alleged legal status as the successor-in-interest to Holchem, Inc., a defunct corporation identified as a named insured on United National's policies.  (UF No. 44.)  That same day, United National likewise agreed to defend L.A. Terminals against both the *L.A. Terminals* counterclaims and the *City of Los Angeles* matter.  (UF No. 45.)  As to the latter, United National reasoned that "it now appears that L.A. Terminals faces possible liability in the *City*

*of Los Angeles* suit potentially within the 'sudden and accidental" exception to 'the policies' pollution exclusions."  Thus, United National "agree[d] to defend L.A. Terminals" under reservation of rights.  (UF No. 46.)  United National appointed Demler, Armstrong & Rowland—a firm experienced in trying cases involving tank leaks and groundwater remediation issues—as L.A. Terminals' and Soco West's defense counsel, subject to a reservation of rights noting that indemnity would be limited to sudden releases of pollutants during the policy term.  (UF Nos. 47-48.) Both plaintiffs have declined United National's defense offer.  (UF No. 49.)

### 5.    This lawsuit.

L.A. Terminals filed this action for declaratory judgment, breach of contract and breach of the covenant of good faith and fair dealing in the Orange County Superior Court, and United National timely removed.  (Notice of Removal, ECF No. 1, 1:27-2:9.)  L.A Terminals has since filed an amended complaint alleging the same causes of action, but which joins Soco West as a plaintiff.  (ECF No. 14.) There, the two plaintiffs generally claim they are entitled to a defense in both underlying cases (the cases United National has agreed to defend) because the "allegations in the Underlying Actions[1] are sufficiently broad to raise the potential that some of the alleged contamination was caused by a discharge, dispersal, release or escape that was sudden or accidental."  (*Id*. at ¶ 33.)  "Without conclusive evidence demonstrating that the qualified pollution exclusion applies (*i.e.* that not a single 'sudden and accidental' release contributed to the alleged contamination or pollution)," they say, "United National should have provided Plaintiffs with an immediate, full, and complete defense."  (*Id*.)

Plaintiffs contend that United National "breached" its defense obligation "by refusing to defend unless and until Plaintiffs prove that 'a sudden and accidental

---

[1] Paragraphs 21 through 23 of the amended complaint mention another third-party complaint in the *L.A. Terminals* matter filed by Union Pacific Railroad Company in March 2019 against L.A. Terminals and Soco West.  Plaintiffs have not tendered that pleading nor asked United National to defend it.

MEMORANDUM OF POINTS AND AUTHORITIES

release of contaminants or pollutants occurred,' when the allegations in the Underlying Action are sufficiently broad to raise the potential for coverage …." (*Id.* at ¶ 45.)

Finally, Plaintiffs claim they have suffered "substantial damages, including out-of-pocket expenses to vindicate their right to a complete defense of the Underlying Actions (so-called '*Brandt* fees' under California law), interest on the monies due from United National, and attorneys fees, costs, and interest thereon, the exact amount of which is yet to be determined."  (*Id.* at ¶ 55.)

## ARGUMENT

**1.   Summary judgment standard.**

Summary judgment is properly granted when no genuine and disputed issues of material fact exist and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

**2.   United National's initial declination to defend the *City of Los Angeles* action was proper because the City sued L.A. Terminals for pollution-caused damage attributed to five decades of day-to-day, routine business operations.**

As plaintiffs' amended complaint asserts, United National initially declined to defend L.A. Terminals in the *City of Los Angeles* action on grounds that the policies' pollution exclusion bars coverage.  (ECF No. 14, ¶¶ 27-28.)  That exclusion generally says the policy coverage "does not apply to" any property damage "arising out of the discharge, dispersal, release or escape of" things like "toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants" onto "land" or in "any water course or body of water."  (UF No. 5.)  To the extent the *City of Los Angeles* suit alleges "property damage," no one disputes that the damage arose out of the discharge and release of toxic chemicals, waste, irritants, and pollutants.  (See amended complaint, ECF No. 14 at ¶ 13 [admitting the City's "lawsuit asserts thirteen causes of action, alleging that LAT is

responsible for the release of hazardous substances related to its operations at the site, which allegedly resulted in contamination to the environment"].)  So it is undisputed that the allegations are within the exclusion and thus barred from coverage in the first instance.

Instead, the claims in this lawsuit turn on the exception saying that the exclusion "does not apply if such discharge, dispersal, release or escape is sudden and accidental."  (UF No. 5.)  As United National explained in its August 6, 2018, disclaimer letter, the *City of Los Angeles* pleadings do not implicate the exception on their own because the City alleged only that "[t]he marine chemical terminal and storage facility" and pipelines operated during L.A. Terminals' and its predecessors "multi-decades long tenancy at the Site … are responsible for the soil, sediment, and groundwater pollution and contamination at, on, and near the Site premises." (UF Nos. 24-25.)  Plaintiffs contend that United National was wrong—that it "turn[ed] well-established California law on its head"—because the City's allegations are "sufficiently broad to raise the potential that some of the alleged contamination was caused by a discharge, dispersal, release or escape that was sudden or accidental" such that a duty to defend exists.  (ECF No. 14, ¶ 33.)

The sudden and accidental exception "acts to reinstate coverage" which is "otherwise barred by the exclusion."  *State of California v. Allstate Ins. Co.*, 45 Cal.4th 1008, 1018 (2009).  Because that is so, "[t]he burden is on the insured … to prove that" the exception applies.  *American States Ins. Co. v. Sacramento Plating, Inc.*, 861 F.Supp. 964 (E.D. Cal. 1994) (construing the exception in a duty-to-defend dispute).  Here, because it is undisputed that the *City of Los Angeles* allegations trigger the general exclusionary language, plaintiffs' burden is to show that the original *City of Los Angeles* allegations exposed L.A. Terminals to potential liability within the exception, i.e., liability that could trigger United National's duty to indemnify a judgment or settlement, when the suit was tendered. *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal.4th 643, 654-655 (2005)

1  (discussing basic standard for determining existence of duty to defend).

2      Here, then, plaintiffs must show that a genuine issue of fact exists as to

3  whether the *City of Los Angeles* pleadings exposed L.A. Terminals to potential

4  liability arising from an "unexpected" discharge or release of pollutants "that is

5  abrupt or immediate in nature" sufficient to defeat summary judgment.  *Shell Oil*

6  *Co. v. Winterthur Swiss Ins. Co.*, 12 Cal.App.4th 715, 755 (1993) (italics added).

7  In the absence of sudden releases, "the 'sudden and accidental' language in the

8  CGL pollution exclusion does not allow for coverage for gradual pollution."  *ACL*

9  *Technologies, Inc. v. Northbrook Prop. & Cas. Co.*, 17 Cal.App.4th 1773, 1777

10  (1993).  To meet its burden, L.A. Terminals must do "*more than speculate* that

11  some polluting events *may* have occurred suddenly and accidentally."  *State of Cal.*

12  *v. Allstate Ins. Co.*, 45 Cal.4th 1008, 1037 (2009) (italics added)  This harmonizes

13  with California's rule that "[a]n insured may not trigger the duty to defend by

14  speculating about extraneous 'facts' regarding potential liability or ways in which

15  the third party claimant might amend its complaint at some future date."  *Upper*

16  *Deck Co. v. Fed. Ins. Co.,* 358 F.3d 608, 615 (9th Cir. 2004) (cit. & quots. omitted).

17      The *City of Los Angeles* complaint tendered originally alleged the following

18  regarding the cause of the environmental damage.  First, the "marine terminal and

19  chemical storage and handling facility" operations commenced in 1949 and the

20  entities responsible for its operation, including L.A. Terminals, "provided, handled

21  and stored a variety of toxic and hazardous chemicals at the Site premises."  (UF

22  10, 13.)  This "marine chemical terminal and storage facility … involved

23  transportation of" various chemicals and pollutants "that leaked from storage tanks,

24  pipes, spilled or were disposed of on the ground, into the soil and seeped into the

25  groundwater."  (UF No. 14.)  It was these "marine chemical terminal, storage and

26  handling operations" over the course of the entities' "multi-decades long tenancy at

27  the Site premises" that "are responsible for the soil, sediment, and groundwater

28  pollution and contamination at, on, and near the Site premises."  (UF No. 16.)  The

"deposit[s] or releases of hazardous substances" have been ongoing "[s]ince 1947" and constitute a "continuing" nuisance.  (UF No. 17.)  The City alleges "at least $48,000,000" in damages.  (UF No. 18.)

Thus, the City claims millions of dollars in damage was caused by continuous leaks, disposals, and spills of pollutants because of the "marine chemical terminal, storage and handling operations" over five decades.  Because one "cannot reasonably call 'sudden' a process that occurs slowly and incrementally over a relatively long time," a discharge or release "of pollutants that happens gradually and continuously for years" like the City alleges "is not 'sudden' in the ordinary and popular sense of the word."  *Shell Oil Co.*, 12 Cal.App.4th at 754 (finding no coverage for pollution occurring over a 30-year period).

In this insurance action, plaintiffs' amended complaint nevertheless contends United National was obligated to defend because the duty to defend exists "unless and until the insurer can **prove**, through undisputed evidence, that it has no duty to indemnify … under any possible scenario."  (ECF No, 14, ¶ 32, emph. orig.)  This, plaintiffs say, United National cannot do because the City's claims "are sufficiently broad to raise the potential that some of the alleged contamination was caused by" a sudden and accidental discharge and there is no "conclusive evidence demonstrating that … not a single 'sudden and accidental' release contributed to the alleged contamination or pollution."  (*Id.* at ¶ 33.)  Plaintiffs presumably rely on *Vann v. Travelers Cos.*, 39 Cal.App.4th 1610 (1995), where the court found a similar pollution exclusion imposed a duty to defend a complaint seeking damages for long-term pollution—despite the acknowledged lack of allegations or facts implicating "sudden and accidental" releases—simply because the insurer did not "produce undisputed evidence precluding" any "potential that the release or escape of at least some of the pollutants" alleged in the complaint "was 'sudden and accidental.'"  *Id.* at 1616.

Such an argument, however, would improperly reverse the burden as to an

exception to an exclusion, which courts applying California law have confirmed belongs to the insured.  In cases addressing indemnity, "once the insurer carries its burden of proving that the exclusion applies, the insured bears the burden of proving the [sudden and accidental] exception." *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1186 (1998).  Likewise, in cases addressing the duty to defend, "[t]he burden is on the insured … to prove that" the exception applies." *American States Ins. Co. v. Sacramento Plating, Inc.*, 861 F.Supp. 964 (E.D. Cal. 1994). Thus, as the California Supreme Court explained in *State of California v. Allstate Ins. Co.*, cited above, the sudden and accidental exception "does not extend indemnity to situations where the policyholder can do no more than speculate that some polluting events may have occurred suddenly and accidentally, or where sudden and accidental events have contributed only trivially to the property damage from pollution."  45 Cal.4th at 1037.  While *State of California* addressed only indemnity, the non-speculation standard the court applied there mirrors the non-speculation standard for the duty to defend.

In this regard, plaintiffs' allegations here remind of the argument rejected in *Upper Deck Co*., 358 F.3d at 615, where the insured, "[r]ecognizing the limitations of the complaint, … shifts gears and argues that the complaint might be amended to give rise to a liability that would be covered under the policy."  Applying California law, however, the Ninth Circuit responded that "any such amendment must be supported by the facts already pled in the complaint."  *Id.,* citing *Olympic Club v. Underwriters at Lloyd's London*, 991 F.2d 497, 503 (9th Cir. 1993) ("Only amendments that would include new causes of action clearly supported by the facts already pled in the complaint may support a finding of potential liability.")  Rather, the court explained, an "insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date."  358 F.3d at 615, quoting *Gunderson v. Fire Ins. Exch*., 37 Cal. App. 4th 1106, 1114 (1995).  The

1   court thus emphasized that "[m]ere speculation that the [underlying] plaintiffs

2   could or will allege such facts does not give rise to a duty to defend." *Upper Deck*

3   *Co.*, 358 F.3d at 615-616.  Mere speculation about possible sudden and accidental

4   releases is all plaintiffs have alleged here.

5        Moreover, even if plaintiffs adduced **actual** evidence of a sudden and

6   accidental release during the policy period, the key would be not whether that

7   release merely "contributed to the alleged contamination or pollution," as they

8   allege.  (Amended Complaint, ECF No. 14, ¶ 33.)  Rather, the question would be

9   whether such releases did **more than** "only contribute[] to contamination caused by

10  pollution occurring in the regular course of" the decades-long chemical operations

11  alleged in the City's complaint.  *Sacramento Plating,* 861 F.Supp. at 971.

12       In *Sacramento Plating*, California's Environmental Protection Agency issued

13  an order addressing a defunct electroplating business contending that "[d]uring the

14  period that Sacramento Plating operated at the Site (1972-1990), various chemicals

15  were handled and stored inside and immediately outside of the plating shop

16  building.  Over time these chemicals were discharged to the concrete floor

17  underlying the plating shop and in the rear storage area." *Id.* at 966.  Just like the

18  *City of Los Angeles* complaint, the Cal-EPA order claimed that "[t]he chemicals

19  either spilled/leaked from the storage tanks, were discharged to the floor from

20  plating tanks as a result spillage [sic], or due to the dipping of parts being plated."

21  *Id*.  When the property owner "requested that [his insurer] defend and indemnify

22  him," the insurer declined and brought a declaratory-judgment action to establish

23  that the policy's pollution exclusion—the same exclusion as United National's—

24  precluded a defense.  *Id*.

25       The court agreed with the insurer because "for twenty-five years toxic

26  chemicals were regularly spilled onto the concrete floor of the plating facility."  *Id.*

27  at 969.  The court so held despite undisputed evidence that three discrete "large

28  spills" of chemicals occurred due to unintentional overflows from storage tanks and

the insured's argument that "the chemicals" from these spills "may have been carried into the soil below the floor – thus causing the contamination." *Id*. at 970. The court explained that "even if" these spills were sudden and accidental, and "even if the incidents did cause some soil contamination, they only contributed to contamination caused by pollution occurring in the regular course of the plating operation." *Id*. at 971;[2] accord, *Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 175 Cal.App.4th 750, 763 (2009) (citing *Sacramento Plating* for position that there is "no duty to defend soil contamination liability claim[s] where chemical spills … occasionally occurred during electroplating procedures").

     As in *Sacramento Plating,* the City's complaint here seeks damages it claims were caused by various companies' business operations in "receiving, storing, handling, and transporting chemicals" over the course of a "multi-decades long tenancy" spanning fifty years.  These allegations do nothing more than allege liability by reason of releases and discharges "of pollutants that happen[ed] gradually and continuously for years" that are "not 'sudden' in the ordinary and popular sense of the word."  *Shell Oil Co.*, 12 Cal.App.4th at 754.  Plaintiffs attempt to avoid this problem by alleging that there could have been incidental, sudden, and accidental releases along with the continuous pollution and that those

---

[2] The court in *A-H Plating, Inc. v. American Nat'l Fire Ins. Co.*, 57 Cal.App.4th 427 (1997), found itself "at odds" with *Sacramento Plating*'s conclusion "that an insurer is entitled to summary judgment on the duty to defend unless the insured can establish it actually contaminated the property at issue in the third party litigation." *Id*. at 443.  The court also "part[ed] company with" a portion of *Sacramento Plating* concluding that none of the spills at the electroplating shop were "accidental" because the shop owners had "expected" them to occur, evidenced by their having "taken precautions to contain" them. *Id*. at 440-441 ("we reject the notion that an insured's attempt to reduce the risk of polluting the environment … renders the … exception inapplicable").  This motion does not rely those portions of *Sacramento Plating*, but rather the case's alternative reasoning that—even in the context of the duty to defend—the "sudden and accidental" exception does not apply to a claim of ongoing pollution.  As to that, the *A-H Plating* court stated:  "We agree with the alternative holding in [*Sacramento Plating*] that the 'sudden and accidental' exception to the pollution exclusion does not apply where an insured pollutes the environment as part of its regular business practice by repeatedly discharging contaminants in the same manner on a daily basis over several years."  57 Cal.App.4th at 441 n. 11.

hypothetical releases could have "contributed" to the $48 million in damages the City claims it incurred.[3]  Just as in *Sacramento Plating*, then, the exception for sudden and accidental releases did not entitle L.A. Terminals to a defense and the policies' pollution exclusions support a grant of summary judgment in United National's favor.

**3.    Assuming Occidental's *L.A. Terminals* counterclaim and third-party complaint created a duty defend, United National extinguished the duty by agreeing to defend plaintiffs.**

In this insurance case, the amended complaint's first two causes of action— "Breach of the Duty to Defend" and "Declaratory Relief: Duty to Defend"—both hinge on the assertions that United National breached by wrongfully "refusing to timely and fully defend" plaintiffs "against the claims asserted in the Underlying Actions" or "reimburse … all expenses incurred in connection with the investigation, negotiation, settlement and defense" thereof.  (ECF No. 14, ¶¶ 44, 49.)  To the extent these allegations refer to United National's initial, 2018 declination to defend L.A. Terminals in the *City of Los Angeles* suit, they are legally meritless for the reasons discussed just above.

To the extent plaintiffs allege breach in connection with their 2019 tender of the *L.A. Terminals* counterclaims and third-party complaints, their claims fail because United National agreed to defend.  The letter of February 15, 2019, from plaintiffs' counsel attaching the new *L.A. Terminals* pleadings constituted "an offer by [plaintiffs] to [United National] to allow [United National] to defend [plaintiffs] in a lawsuit."  *Faust v. The Travelers*, 55 F.3d 471, 472 (9th Cir. 1995) (Cal. law).

---

[3] One may infer this is why L.A. Terminals alleged in the *L.A. Terminals* complaint and the *City of Los Angeles* cross-complaint that the contamination "was caused by various sudden and accidental releases" of pollutants or contaminants, and why it never responded to United National's September 2018 inquiry about those assertions.  As the amended complaint admits here, those underlying pleadings are part of L.A. Terminals' "overall defense strategy" against the City's claims.  (ECF No. 14, ¶¶ 19-20.)  Thus, if L.A. Terminals is ultimately found liable to the City, it will amusingly point to its own pleadings to claim that its liability stems from sudden and accidental releases.

United National accepted the tender on April 12, 2019, including the decision to withdraw its prior disclaimer based on new facts and to defend L.A. Terminals in the *City of Los Angeles* action, and appointed defense counsel for both L.A. Terminals and Soco West. (UF Nos. 45-48.) By doing this, United National fully performed its duty to defend, if any, as a matter of law because "[a]n obligation is extinguished by an offer of performance." Cal. Civ. Code § 1485.

We are mindful that, in order to be effective, "[a]n offer of performance must be free from any conditions" unless the conditions are justified. Civ. Code § 1494; see *Montano v. City of South Gate*, 13 Cal.App.3d 446, 449 (1970) (obligation extinguished because, even though "[d]efendant's tender was not unconditional … it contained no improper condition"). United National's offers to defend plaintiffs' subject to a reservation of rights imposed no improper conditions because an insured "has no right to a defense free from any reservation of rights." *Healy Tibbitts Constr. Co. v. Foremost Ins. Co.*, 482 F.Supp.830, 837 (N.D. Cal. 1979).

The amended complaint also contends, of course, United National's defense obligation include a duty to "reimburse … expenses incurred in connection with the investigation" and "settlement" of the *City of Los Angeles* and *L.A. Terminals* matters. (ECF No. 14, ¶ 49.) But this is nonsense. Payment of "settlement" costs is part of an insurer's separate duty to indemnify, which "runs to claims that are actually covered, in light of the facts proved," and thus "arises only after liability is established." *Buss v. Sup. Ct.*, 16 Cal.4th 35, 45-46 (1997).) No liability has been "established" in the *City of Los Angeles* and *L.A. Terminals* matters, which are ongoing, and there is no "settlement" to fund.

Likewise, United National's policies do not oblige it to "reimburse" an insured's litigation costs, but instead to **defend** covered claims. The duty "entails the rendering of a service, viz., the mounting and funding of a defense." *Buss*, 16 Cal.4th at 46. This is just what United National has offered to do by agreeing to defend and appointing counsel to defend both L.A. Terminals and Soco West. As a

matter of law, United National's offer of performance satisfied its contractual obligation to defend and entitles it to summary judgment.

### 4.   United National cannot be liable for breaching the implied covenant of good faith and fair dealing as a matter of law.

The amended complaint generally alleges that United National "breached its duties" of good faith and fair dealing "by engaging in unreasonable conduct," including that it "has wrongfully refused to defend Plaintiffs in the Underlying Actions" and "has flouted California law by wrongfully refusing to defend unless Plaintiffs set forth evidence showing that a 'sudden and accidental release of contaminants or pollutants occurred' when the allegations are sufficiently broad … to raise the potential that some portion of the alleged contamination was caused by a" sudden and accidental release." (ECF No. 14, ¶ 54 (a)-(b).)  It is also alleged that United National "failed to properly investigate, evaluate, and process Plaintiffs' insurance claims in a fair and even-handed manner," has "improperly given greater weight to its own interest in avoiding its defense obligation than it accorded to Plaintiffs' interest in a prompt and complete defense," and "unreasonably exposed Plaintiffs to significant damage and expense by forcing them to litigate to compel United National to" provide a defense.  (*Id*. at (c)-(e).)

"In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).  In the first instance, then, no bad-faith claim lies because United National has agreed to defend Soco West in the *L.A. Terminals* action and defend L.A. Terminals in both underlying lawsuits—it is not "withholding benefits."  Likewise, there were no "benefits due" until United National agreed to defend because no duty to defend existed until United National received the *L.A. Terminals* counterclaims and third-party complaints.  "It is clear that if there is no potential for

coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 36 (1995), citing *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151-1153 (1990). Under *Waller*, because there was no coverage for either plaintiff until United National received notice of Occidental's *L.A. Terminals* pleadings, the bad-faith claim fails along with the contract and declaratory-judgment claims.

Moreover, even if plaintiffs were right that United National owed a duty to defend L.A. Terminals from the initial *City of Los Angeles* tender date (and they are not), the evidence shows that United National's handling of the claim was reasonable, and thus not in bad faith, as a matter of law. To violate the covenant of good faith and fair dealing, an insurer must act *unreasonably*. *Morris v. Paul Revere Life Ins. Co.*, 109 Cal.App.4th 966, 973 (2003). Unreasonable conduct is not synonymous with mistaken, or even negligent, handling of a claim. *Careau v. Sec. Pac. Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 1395 (1990). Instead, bad faith requires a "conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Id.*

Here, United National first received effective notice of the *City of Los Angeles* action on May 4, 2018. (UF No. 6.) Its Claim Director spoke with L.A. Terminals' counsel thirteen days later, May 17, 2018, and a file was opened the next day, May 18, 2018. (UF Nos. 7-8.) Ms. Hoffman was then assigned to handle the claim and further discussed the tender and lawsuit with counsel on June 1, 2018. (UF No. 9.) On July 17, 2018, Ms. Hoffman called counsel again regarding the claim and left a voice message. (UF No. 19.) On July 19, 2018, Ms. Hoffman assigned the claim to outside coverage counsel, and coverage counsel promptly discussed the matter with L.A. Terminals' counsel. (UF Nos. 20-21.) United

National, through Ms. Hoffman, then sent a disclaimer letter on August 10, 2018 (the letter was dated August 6th).  (UF Nos. 22, 28.)

"Sending the claim to outside counsel" and promptly responding to it like United National did "would seem to indicate an additional precaution to ensure that the Policy is properly interpreted and the rights of the insured and insurer are respected."  *Gaylord v. Nationwide Mut. Ins. Co.*, 776 F.Supp.2d 1101, 1126 (E.D. Cal. 2011) (granting summary judgment to insurer on breach of the implied covenant claim premised on breach of the duty to defend).

Further, Ms. Hoffman sent the August 6th disclaimer letter attached to an email wherein she stated that "if you," meaning L.A. Terminals or its counsel, "have any additional information [for United National] to review, please forward it to my attention" because United National "**will reevaluate our coverage position at any time** based on receipt of new or additional information."  (UF No. 28, emph. added.)  The letter itself then invited L.A. Terminals to provide any additional facts and evidence in its possession which it believed demonstrated a potential for covered liability.  (UF No. 26.)  The letter also "ask[ed] that L.A. Terminals provide us with facts, documents or legal reasoning showing that the *City of Los Angeles* action potentially seeks damages covered by the United National policies" and requested that L.A. Terminals "submit … any such facts, documents and/or legal reasoning that you wish United National to consider at your earliest convenience."  (UF No. 26.)  Likewise, the letter asked L.A. Terminals "to contact" Ms. Hoffman "if you believe any of the information contained herein is inaccurate or should be supplemented in any way," and explained that "[s]hould you have any documents or any other information that you believe would aid us in the further evaluation of this matter, please forward them immediately to the undersigned." (UF No. 27.)  L.A. Terminals never responded.  (UF No. 29.)

United National need not have done more because "[a]n insurer does not have a continuing duty to investigate the potential for coverage if it has made an

informed decision on coverage at the time of tender." *American States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal.App.4th 18, 26 (2009).  But it did more, sending a second letter to L.A. Terminals a month later, September 7, 2018.  (UF No. 35.)  As that letter explained, United National reached out a second time because it had recently been "made aware of" both the *L.A. Terminals* action and L.A. Terminals' *City of Los Angeles* cross-complaint, and had discovered that, "[c]ontrary to the allegations in the original *City of Los Angeles* complaint," the pleadings filed by L.A. Terminals itself (that is, by, not against, L.A. Terminals) "repeatedly allege without explication that the pollution at issue was indeed caused and contributed to by 'sudden and accidental' releases or spills of hazardous materials and chemicals." (UF No. 35.)  So, aware of L.A. Terminals own new allegation of sudden and accidental releases—despite its silence to United National itself—,United National again invited L.A. Terminals to "provide us with any and all facts and evidence supporting the" existence of a "sudden and accidental" discharge of pollutants. (UF No. 35.)  Again L.A. Terminals ignored this letter.  (UF No. 36.)

Under these circumstances, it cannot be shown that United National gave "greater weight to its own interest in avoiding its defense obligation than it accorded to" L.A. Terminals' "interest in a prompt and complete defense." (Amended Complaint, ECF No. 14, ¶ 54(d).)  After all, an "insurer's willingness to reconsider its denial of coverage and to continue an investigation into a claim" weighs strongly in "favor of its good faith" claim-handling conduct.  *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 880 (2000); e.g., *Gaylord v. Nationwide Mut. Ins. Co.*, 776 F.Supp.2d at 1126 (finding "insufficient evidence that [insurers] have denied coverage unreasonably" where insurers "made multiple attempts to contact [the insured's] counsel in order to investigate the claim" without response); *Austero v. National Cas. Co.*, 84 Cal.App.3d 1, 35 (1978) (no breach of the implied covenant where "there was a continuing effort by the insurer… to determine if" coverage existed through

"efforts to seek more information from several sources and reconsider [the insured's] claim at various times"), disapproved on other grounds in *Egan v. Mutual of Omaha Ins. Co*, 24 Cal.3d 809, 824 n. 7 (1979).   Here, United National's letters and Ms. Hoffman's emails made clear that the company would revisit its coverage conclusion "at any time" if L.A. Terminals simply asked it to.

And that is exactly what United National did once it eventually received the *L.A. Terminals* counterclaims and third-party complaints.  Not only did it agree to defend those pleadings, it also revisited its earlier disclaimer and agreed defend L.A. Terminals in the *City of Los Angeles* action under reservation of rights because the counterclaims touched on the "sudden and accidental" exception, whereas the original pleadings did not.  (UF Nos. 45-46.)  What is more, the amended complaint here admits the counterclaims were filed on December 5, 2018. (ECF No. 14, ¶ 21.)  While L.A. Terminals filed this lawsuit a month later, it bothered to tell United National about the counterclaims only on February 15, 2019, despite United National's repeated requests to "provide us with any and all facts and evidence supporting the" existence of a "sudden and accidental" discharge.  *United National* did not expose L.A. Terminals to "significant damage and expense by forcing [L.A. Terminals] to litigate to compel prompt and complete defense of the Underlying Actions."  (Amended Complaint, ¶ 54(e).)  L.A. Terminals carefully chose that course all on its own.

Finally, even if ultimately found incorrect, United National's disclaimer was reasonable as a matter of law.  The existence of genuine issues of coverage regarding whether the policies covered L.A. Terminals' initial tender entitles United National to a ruling that it did not act in bad faith.  *Lunsford v. American Guar. & Liab. Ins. Co.*, 18 F.3d 653 (9th Cir. 1994).  When "there was a genuine dispute as to coverage" at the time of denial, a "court can conclude as a matter of law that insured's denial of a claim is not unreasonable."  *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).  Under this rule, an insurer may not be held

liable for bad faith if its decision was "founded on a basis that is reasonable under all the circumstances." *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 724 n. 7 (2007). In applying it, "the court does not decide which party is 'right' as to the disputed matter, but only that a reasonable and legitimate dispute actually existed." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 348 n. 7 (2001).

Moreover, the doctrine applies not only to first-party property claims but also to third-party claims involving the duty to defend. *Gaylord v. Nationwide Mut. Ins. Co.*, 776 F.Supp.2d at 1125 (noting that the Ninth Circuit applies the doctrine when the duty to defend is at issue). In *Gaylord*, the court found "insufficient evidence that defendants have denied coverage unreasonably" because (1) there were multiple letter and calls between the insured and insurer in an attempt to gather information, (2) coverage was denied based on the reasonable interpretation of several policy exclusions, and (3) defendants sent the case to an outside attorney for evaluation, who concluded there was no coverage. *Id*. at 1127.

So here. United National repeatedly contacted L.A. Terminals' counsel during the claim process to discuss the claim, and referred the claim to outside counsel, who discussed the nature of the claim with L.A. Terminals' attorney. United National disclaimed based on the reasonable conclusion that its pollution exclusions barred coverage for the *City of Los Angeles* matter because the claims asserted did not implicate any "sudden and accidental" releases. United National then sent multiple letters to L.A. Terminals in an attempt to gather further information about the claims and, despite disclaiming, made clear its willingness to reassess and consider additional facts or legal reasoning at L.A. Terminals' request. Once L.A. Terminals (very) belatedly did so in tendering the *L.A. Terminals* counterclaims, United National revisited its decision and agreed to defend. These facts cannot be disputed and confirm that United National acted reasonably at every step. It cannot be liable for bad faith and is thus entitled to summary judgment on

the issue as a matter of law.

## CONCLUSION

United National correctly asserted in August 2018 that the claims alleged in the *City of Los Angeles* action against L.A. Terminals did not trigger coverage under the policies because the City's complaint implicated no "sudden and accidental" release of pollutants.  Despite this, and despite complete silence from L.A. Terminals, United National continuously asked for further information as part of its ongoing investigation into the claim.  When new information was finally tendered in the form of Occidental's *L.A. Terminals* pleadings, United National revised its position.  So United National has extended defense against every claim plaintiffs have tendered for coverage.

Under these circumstances, United National cannot be liable for anything alleged in this suit because it owed nothing to L.A. Terminals initially, extinguished any duty to defend that may have arisen upon the renewed tender, and reasonably handled the claim at every step.  United National therefore respectfully urges the Court to order entry of a summary judgment declaring that United National cannot be liable for any relief sought in the complaint as a matter of law.

Respectfully submitted,

May 20, 2019                    NIELSEN, HALEY & ABBOTT LLP

By:  _____/s/  Daniel N. Katibah_____
                    Daniel N. Katibah
                    Attorneys for Defendant
                    United National Insurance Company