O

# United States District Court
# Central District of California

| | |
|---|---|
| L.A. TERMINALS, INC. and SOCO WEST, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED NATIONAL INSURANCE COMPANY, <br><br> Defendant. | Case No. 8:19-CV-00286-ODW (PVCx) <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [52]** |

## I.   INTRODUCTION

This action arises from an insurance coverage dispute between insureds, Plaintiffs L.A. Terminals, Inc. ("LAT"), and Soco West, Inc. ("Soco") (collectively, "Plaintiffs"), and their insurance carrier, Defendant United National Insurance Company ("Defendant" or "United National"). Plaintiffs allege that United National has a duty to defend them in underlying environmental contamination lawsuits. (Second Am. Compl. ("SAC") ¶¶ 55–59, ECF No. 50.) United National moves to dismiss the SAC arguing that it fulfilled its contractual obligations under the relevant insurance policies (the "Motion"). (*See* Mot., ECF No. 52.) Plaintiffs opposed and

1  United National replied. (*See* Opp'n to Mot. ("Opp'n"), ECF No. 55; Reply, ECF
2  No. 56.) For the reasons that follow, the Court **DENIES** United National's Motion.[1]

### II. FACTUAL AND PROCEDURAL BACKGROUND

**A. Parties and Pertinent Policies**

The City of Los Angeles (the "City"), a non-party to this suit, owns an approximately 0.74-acre property located at 560 Pier "A" Place in Wilmington, California (the "Sliver Site"), and a surrounding 13.5-acre property, known as the Los Angeles Refinery, Marine Terminal (the "Marine Terminal"). (SAC ¶¶ 10–12.) LAT operated on the Sliver Site from approximately 1982 to 1992, storing and distributing various chemicals including halogenated volatile organic compounds ("HVOCs"). (*Id.* ¶¶ 11, 14, 17.) Soco is alleged to have conducted operations at the Sliver Site with LAT during the same time period. (*Id.* ¶ 17.)

From 1982 through 1985, United National insured Plaintiffs under four primary comprehensive general liability policies (the "Policies"). (*Id.* ¶ 5, Exs. 1–4, ECF Nos. 50-1, 50-2, 50-3, 50-4.) Three of the Policies identify the City as an additional insured. (*Id.* Ex. 2 (Policy No. GA81138) at 25; *id.* Ex. 3 (Policy No. GA81186) at 6; *id.* Ex. 4 (Policy No. GA502997) at 8.) The Policies provide that United National "shall have the right and duty to defend any suit against the insured seeking damages on account of . . . property damage . . . ." (SAC ¶ 7.) The Policies further provide that United National "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this policy applies, caused by an occurrence . . . ." (*Id.* ¶ 6.) The Policies define "property damage" as "physical injury to or destruction of tangible property," and define an "occurrence," as "an accident, including continuous or repeated exposure to substantially the same general conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured." (*Id.* ¶¶ 8–9.) The

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Policies exclude coverage for property damage that is caused by the "discharge, dispersal, release or escape" of "irritants, contaminants or pollutants" (the "Qualified Pollution Exclusion"). (*Id.* ¶ 27.) However, the Policies state the Qualified Pollution Exclusion does not apply where the "discharge, dispersal, release or escape is sudden and accidental." (*Id.*)

### B. The Underlying Actions

In January 2018, the City filed a complaint in Los Angeles Superior Court against LAT and other defendants, not including Soco, captioned *City of Los Angeles v. L.A. Terminals, Inc., et al.*, No. NC061591, alleging environmental contamination due to Plaintiffs' operations at the Sliver Site (the "LASC Action"). (*Id.* ¶ 13.) In March 2018, the City filed a first amended complaint in the LASC Action, alleging that pollution at the Sliver Site had been ongoing "[s]ince 1947" and that it was caused, in part, by hazardous materials that "leaked from storage tanks, pipes, spilled or were disposed of on the ground, into the soil and seeped into the groundwater." (*Id.* ¶ 14; Req. Jud. Notice ("RJN") Ex. 1 ¶¶ 18, 23, 31, ECF No. 54-1.) The City further alleged that defendants "were negligent in . . . their receiving, storing and handling of hazardous substances and chemicals on the [Sliver] Site premises." (RJN Ex. 1 ¶ 26.) In August 2018, LAT filed a cross-complaint in the LASC Action against the City and other parties, contending that these parties were responsible for the alleged pollution at the Sliver Site. (SAC ¶ 19.) In its cross-complaint, LAT specifically alleged that the purported environmental contamination was "caused by various sudden and accidental releases, and other discharges and releases of [h]azardous [m]aterials." (RJN Ex. 2 ¶ 20, ECF No. 54-2.)

In May 2019, the City filed a second amended complaint in the LASC Action adding Soco as a defendant and specifying that the defendants' alleged pollution occurred "suddenly and accidentally, and over long periods of time." (RJN Ex. 3 ¶¶ 9, 41, ECF No. 54-3.) In January 2020, the City filed a third amended complaint in the LASC Action reiterating its allegations that defendants "spilled, leaked, discharged,

poured, and released, suddenly and accidentally, and over long periods of time . . . chemicals, hazardous materials, contaminants and pollutants . . . near the Sliver Site premises." (RJN Ex. 4 ¶ 41, ECF No. 54-4.)

In August 2018, LAT initiated a separate action in the Central District of California against the City and other third parties under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), captioned *L.A. Terminals, Inc. v. City of Los Angeles, et al.*, No. 2:18-cv-06754-MWF (RAOx), involving the same alleged "sudden and accidental" environmental contamination at issue in the LASC Action (the "Central District Action"). (SAC ¶ 20; RJN Ex. 5 ¶ 14, ECF No. 54-5.) In December 2018, the City and third-party defendant Occidental Chemical Corporation ("Occidental") filed counterclaims against LAT and third-party complaints against Soco for, among other claims, contribution and declaratory relief, in the Central District Action. (SAC ¶ 21.)

**C.     Coverage Dispute**

On May 4, 2018, LAT tendered the first amended complaint in the LASC Action to United National for coverage under the Policies. (*Id.* ¶ 25.) In a letter dated August 6, 2018, United National, relying on the Qualified Pollution Exclusion, disclaimed any duty to defend or indemnify LAT because, at the time, the City had not expressly alleged a "sudden and accidental" release of pollutants. (*Id.* ¶¶ 26–28.) In a letter dated September 7, 2018, United National reaffirmed its denial of coverage but invited LAT to submit facts and evidence "indicating that a[] sudden and accidental release [had] occurred" at the Sliver Site. (*Id.* ¶ 37.) The City, as an additional insured under the Policies, also tendered the cross-complaint in the LASC Action to United National for coverage. (*Id.* ¶ 38.) United National agreed to defend the City against LAT's claims because the cross-complaint specifically alleged a "sudden and accidental" release of hazardous materials. (*Id.* ¶ 39; RJN Ex. 2 ¶ 20.)

On February 15, 2019, Plaintiffs tendered the City and Occidental's counterclaims and third-party complaints filed against Plaintiffs in the Central District

Action to United National for coverage under the Policies. (SAC ¶¶ 21, 43.) Occidental's pleadings specifically alleged the "contamination at issue was caused, 'in whole or in part, by one or more releases of hazardous materials, including sudden and accidental releases'" near the Sliver Site. (*Id.* ¶ 23.) On April 12, 2019, based on Occidental's "sudden and accidental" allegation, United National agreed to defend Plaintiffs in the Central District Action subject to a reservation of rights. (*Id.* ¶¶ 44–45.) United National also agreed to defend LAT in the LASC Action moving forward, subject to a similar reservation of rights. (*Id.*)

United National appointed attorney John R. Brydon of Demler Armstrong & Rowland as Plaintiffs' defense counsel in the underlying litigation. (*Id.* ¶ 48.) Plaintiffs rejected the appointment and requested independent counsel, arguing that United National's reservations and coverage of the City's defense under the same Policies created a conflict of interest. (*Id.* ¶¶ 46–48.) Plaintiffs also argued that inserting new attorneys into the underlying litigation nearly a year after the LASC Action commenced would be unreasonable and prejudicial to Plaintiffs. (*Id.* ¶ 49.) United National disputes that Plaintiffs are entitled to independent counsel and, thus, has not reimbursed Plaintiffs for any defense costs. (*Id.* ¶¶ 48–50.)

**D.     The Instant Action**

On January 8, 2019, LAT filed this action in the Orange County Superior Court and United National timely removed based on diversity jurisdiction. (Notice of Removal ¶¶ 1–2, ECF No. 1.) Plaintiffs assert four causes of action against United National for: (1) declaratory relief—duty to defend in the LASC Action; (2) declaratory relief—right to independent counsel; (3) breach of the duty to defend; and (4) breach of the covenant of good faith and fair dealing. (SAC ¶¶ 55–77.) United National moves to dismiss the SAC in its entirety arguing that Plaintiffs cannot plausibly allege that its initial denial of coverage was improper or that Plaintiffs are entitled to independent counsel. (*See generally* Mot.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### IV. REQUEST FOR JUDICIAL NOTICE

In conjunction with the Motion, United National requests that the Court take judicial notice of the first, second, and third amended complaints, and the cross-complaint in the LASC Action, as well as the complaint in the Central District Action. (RJN, ECF No. 54.) Plaintiffs did not oppose United National's request.

The Court may take judicial notice of court filings and other matters of public record. Fed. R. Evid. 201(b); *see U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating the court "may take notice of proceedings [and related filings] in other courts, both within and without the federal

judicial system, if those proceedings have a direct relation to matters at issue"); *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (stating the court "may consider certain materials . . . [including] matters of judicial notice" when ruling on a Rule 12(b)(6) motion to dismiss).

Accordingly, the Court **GRANTS** United National's unopposed RJN and takes judicial notice of the pleadings filed in the underlying LASC and Central District Actions, but not the truth of the facts contained therein. *Lee*, 250 F.3d at 690.

## V. DISCUSSION

United National moves to dismiss the SAC on several grounds, including that: (1) United National properly declined to defend LAT in the LASC Action because the damage alleged in the first amended complaint fell within the Qualified Pollution Exclusion; (2) no conflict of interest exists to warrant appointment of independent defense counsel; (3) United National did not breach its duty to defend by refusing to appoint independent counsel or reimburse Plaintiffs' litigation costs; (4) United National did not engage in unreasonable conduct. The Court addresses each argument in turn.

### A. Duty to Defend

Plaintiffs allege that United National was bound by an expansive duty to defend the LASC Action from the initial tender pursuant to the Policies. (SAC ¶¶ 29–32; *see also* Opp'n 9–15.) United National contests the applicability of the duty to defend and counters that, based on the damages alleged in the LASC Action at the time of tender, the Policies' Qualified Pollution Exclusion barred coverage. (Mot. 9–17; Reply 1–6.)

An insurer's duty to defend is broader than its duty to indemnify and may apply even in an action where no damages are ultimately awarded. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). The duty to defend arises as soon as the insured tenders a claim that involves a potentially covered loss. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993) ("*Montrose I*"). "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must

prove it *cannot.*" *Id.* at 300 (emphasis in original). Even if the precise causes of action pled by the third-party complaint fall outside of the policy coverage, the insurer's duty to defend may not be excused "where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275–76 (1966)). The California Supreme Court summarized general principles on this issue:

> If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

*Id.* However, the insurer's duty to defend does not extend to claims for which there is no potential for liability coverage under the policy; this includes claims which fall outside the scope of the policy or are expressly excluded under the policy. *See Alterra Excess & Surplus Ins. Co. v. Snyder*, 234 Cal. App. 4th 1390, 1401–02 (2015). Further, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995).

Here, it is clear that the LASC Action is a "suit" seeking damages against the insured Plaintiffs due to an "occurrence" causing "property damage" during the Policies' coverage period. (SAC ¶¶ 6–9.) Those bare facts alone give rise to a duty to defend. *See Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) (explaining the possibility of coverage, not the specific causes of action asserted in the underlying complaint, triggers the duty to defend). United National contends that, because the City did not specifically allege "sudden and accidental"

1 environmental contamination in the tendered complaint, the Qualified Pollution
2 Exclusion applied, and United National owed no duty to defend until Plaintiffs
3 presented evidence the exclusion did not apply. (*See* Mot. 10–14.)  United National
4 misplaces the burden of proof.  Once Plaintiffs showed there was a potential that the
5 alleged environmental contamination was sudden and accidental (i.e., a potential for
6 coverage), United National needed to conclusively refute that potential before denying
7 coverage.  *See Anthem Elecs., Inc. v. Pac. Empers. Ins. Co.*, 302 F.3d 1049, 1054–55
8 (9th Cir. 2002).

9       As Plaintiffs point out, the City alleged in the LASC Action that the defendants
10 there "were negligent in . . . their receiving, storing and handling of hazardous
11 substances and chemicals" resulting in contamination of the soil and groundwater on
12 the Sliver Site.  (RJN Ex. 1 ¶ 26.)  This suggests that the conduct on which Plaintiffs'
13 liability hinges is alleged to be accidental.  United National argues that the City's
14 allegations of gradual, long-term pollution demonstrate that the environmental
15 contamination was not sudden, barring coverage under the Policies.  (*See* Mot. 10–11;
16 Reply 1–3.)  However, allegations of historic pollution do not foreclose the possibility
17 that the alleged property damage was caused, at least in part, by a sudden release of
18 contaminants.  If anything, whether hazardous materials were suddenly or accidentally
19 discharged during Plaintiffs' operations at the Sliver Site are factual questions that
20 support a finding of a duty to defend.  *Horace Mann*, 4 Cal. 4th at 1081 ("Any doubt
21 as to whether the facts give rise to a duty to defend is resolved in the insured's
22 favor.").

23       Additionally, United National's reliance on *American States Insurance Co. v.*
24 *Sacramento Plating, Inc.* to justify its coverage denial is inapposite, as that case
25 involved repeated "expected" incidents of environmental contamination.  861 F. Supp.
26 964, 969–70 (E.D. Cal. 1994).  The *Sacramento Plating* court found that three
27 unintended large chemical spills "only contributed to contamination caused by
28 pollution occurring in the regular course of the plating operation" and, thus, the

pollution exclusion in the pertinent policies precluded coverage. *Sacramento Plating*, 861 F. Supp. at 971. In contrast, here the City did not allege that Plaintiffs expected or intended to discharge hazardous materials while operating at the Sliver Site, but rather that Plaintiffs did so negligently. (RJN Ex. 1 ¶ 26.) Indeed, the City's subsequent amended complaints describing Plaintiffs' alleged negligent conduct as "sudden and accidental" environmental contamination show there was a *potential* for coverage from the inception of the LASC Action which should have triggered United National's duty to defend. *Montrose I*, 6 Cal. 4th at 300 (explaining that the "bare 'potential' or 'possibility' of coverage" under an insurance policy will trigger the insurer's duty to defend).

Because the duty to defend is so broad as to encompass even a mere possibility of coverage, Plaintiffs have plausibly alleged that United National owed a duty to defend Plaintiffs in the LASC Action as soon as LAT tendered the first amended complaint. Accordingly, the Court **DENIES** the Motion with respect to Plaintiffs' first cause of action.

**B.     Independent Counsel**

Plaintiffs argue that they are entitled to independent defense counsel for three main reasons. (SAC ¶¶ 60–68; *see also* Opp'n 15–19.) First, United National's agreement to defend the City and Plaintiffs—adverse parties in the underlying litigation—created an untenable conflict of interest necessitating the appointment of independent counsel. Second, United National's agreement to defend Plaintiffs subject to a reservation of rights to disclaim coverage also created a conflict. Third, United National's failure to defend Plaintiffs after the initial tender of the LASC Action entitled Plaintiffs to direct their own defense. United National contends that Plaintiffs' conflict-of-interest theories are not supported by law and that it maintains the right to control Plaintiffs' defense. (Mot. 18–21; Reply 6–11.)

In some types of conflict of interest situations, the insurer must provide not only a defense for the insured, but an independent attorney selected by the insured. *See,*

*e.g.*, *Previews, Inc. v. Cal. Union Ins. Co.*, 640 F.2d 1026, 1028 (9th Cir. 1981). This is known as *Cumis* counsel, emanating from the California case *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.*, 162 Cal. App. 3d 358 (1984). *Cumis* was later codified in California Civil Code Section 2860, which clarifies the rights of the insurer in conflict of interest situations. *See* Cal. Civ. Code § 2680(b). Not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel at the insurer's expense. *See Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1394 (1993). Nor does every reservation of rights entitle an insured to select *Cumis* counsel. *See* Cal. Civ. Code § 2680(b). "For independent counsel to be required, the conflict of interest must be 'significant, not merely theoretical, actual, not merely potential.'" *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093, 1101 (2001) (quoting *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1007 (1998)).

Some of the circumstances that may create a conflict of interest requiring the insurer to provide independent counsel include: (1) where the insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim (*Golden Eagle*, 20 Cal. App. 4th at 1394–1395); (2) where the insurer insures both the plaintiff and the defendant (*O'Morrow v. Borad*, 27 Cal. 2d 794, 799 (1946)); (3) where the insurer has filed suit against the insured, whether or not the suit is related to the lawsuit the insurer is obligated to defend (*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050 (1992)); (4) where the insurer pursues settlement in excess of policy limits without the insured's consent and leaves the insured exposed to claims by third parties (*Golden Eagle*, 20 Cal. App. 4th at 1396); and (5) any other situation where an attorney who represents the interests of both the insurer and the insured finds that his or her "representation of the one is rendered less effective by reason of his [or her] representation of the other." (*Id.* (quoting *Spindle v. Chubb/Pac. Indem. Grp.*, 89 Cal. App. 3d 706, 713 (1979))). "The potential for conflict requires a careful analysis of

the parties' respective interests to determine whether they can be reconciled (such as by a defense based on total nonliability) or whether an actual conflict of interest precludes insurer-appointed defense counsel from presenting a quality defense for the insured." *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 19 Cal. App. 5th 789, 798 (2018) (citation omitted).

Plaintiffs aver that United National concurrently defending the City and Plaintiffs in the underlying litigation under the same Policies presents an actual conflict of interest requiring the appointment of independent counsel. (SAC ¶ 47.) Indeed, "[t]here is a large block of authority recognizing what also seems relatively obvious: when an insure[r] is obligated to provide defenses for two or more insureds with adverse interests, there is a sufficient conflict of interest that the insurer must provide independent counsel for each insured at its own expense." *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 237 Cal. App. 4th 23, 28 (2015) ("*Centex I*") (citation omitted). Nevertheless, United National insists that Plaintiffs' right to independent counsel is unsupported by California law. United National relies primarily on two cases to support its argument: *Federal Insurance Co. v. MBL, Inc.*, 219 Cal. App. 4th 29 (2013) ("*MBL*") and *Centex I*. However, the insurers in *MBL* or *Centex I*, did not insure both sides of the litigation as United National does here.

In *MBL*, the federal government brought a CERCLA action against the property owners and lessees of a dry-cleaning facility suspected of causing soil and groundwater contamination to recover monitoring and remediation costs. *MBL*, 219 Cal. App. 4th at 33. The defendants subsequently filed third-party actions against, among others, MBL, Inc., a supplier of dry-cleaning products, seeking indemnity, contribution, and declaratory relief. *Id.* MBL, Inc. then filed a cross-claim which named several additional cross-defendants. *Id.* at 35. The court determined that MBL, Inc. was not entitled to independent counsel even though the insurers simultaneously represented MBL, Inc. and some other third-party defendants and cross-defendants because the parties were not "direct adversaries in the litigation." *Id.*

at 46–47. The *MBL* court did not address whether MBL, Inc. would be entitled to independent counsel if the insurers covered the federal government, the opposing party in the underlying pollution dispute. In *Centex I*, a group of homeowners brought a construction defect action against a developer for work performed by various subcontractors. *Centex I*, 237 Cal. App. 4th at 25–26. The developer then sued the subcontractors for indemnity, contribution, and repayment. *Id.* at 26. The court found that the insurer defending the developer and the subcontractors did not create an ethical conflict of interest requiring independent counsel. *Id.* at 28, 30–32. Like *MBL*, *Centex I* is silent as to whether a conflict would exist if the insurer defended the developer and subcontractors, as well as the homeowners, *i.e.* both sides of the litigation.

The situation presented here is most analogous to the circumstances addressed in *O'Morrow v. Borad*. In that case, an insurance company insured two drivers involved in the same car accident. 27 Cal. 2d at 795. In the lawsuit between the drivers, each claimed that he was entitled to recover for personal injuries and property damage resulting from the collision. *Id.* at 796. The California Supreme Court held that, under those facts, the insurance company could not control the defenses of the two policyholders, and the driver who retained his own counsel was entitled to reimbursement of his costs of suit and attorneys' fees. *Id.* at 799–800. In the underlying LASC Action, the City brought suit for environmental contamination against Plaintiffs, and Plaintiffs filed a cross-complaint for indemnity, contribution, declaratory relief, and breach of contract against the City. (*See* RJN Exs. 1, 2.) United National first agreed to defend the City as an additional insured under the Policies against Plaintiffs' claims, and later agreed to defend Plaintiffs in the same action against the City's claims. Thus, unlike the insurers in *MBL* and *Centex I*, here United National agreed to defend "truly adverse plaintiffs and defendants, not co-defendants," raising an untenable conflict of interest. *Travelers Prop. v. Centex Homes*, No. C 10-02757 CRB, 2011 WL 1225982, at *8 (N.D. Cal. Apr. 1, 2011).

United National further argues that its concurrent defense of both sides of the LASC Action raises no conflict because it split the claim files for each insured and appointed segregated liability adjusters. (Mot. 20–21); *see MBL*, 219 Cal. App. 4th at 46 (finding no conflict where insurer retained different law firms to defend insureds, assigned different claims adjusters, and ensured the adjusters did not discuss the claims or access each other's files). Yet, Plaintiffs allege that "United National had a single claims professional, Randi Hoffman, handling all claims for insurance coverage associated with the Underlying Actions . . . [and] commingling information" from the policyholders. (SAC ¶ 41.) United National cites to documents produced in discovery to assert that, when it agreed to defend Plaintiffs in April 2019, it "split the liability file and appointed walled-off adjusters" to separately handle the City and Plaintiffs' insurance claims. (Mot. 21 & n.4.) However, United National's reliance on evidence outside of the pleadings to rebut Plaintiffs' allegations is improper on a motion to dismiss. *See Ritchie*, 342 F.3d at 907–08 (explaining that courts may not normally consider materials outside of the pleadings when deciding a motion to dismiss).

The Court accepts Plaintiffs' factual allegations as true for the purposes of this Motion and finds that Plaintiffs have stated a plausible claim for independent counsel. *See Lee*, 250 F.3d at 679. Accordingly, the Court **DENIES** the Motion with respect to Plaintiffs' second cause of action.[2]

## C. Breach and Bad Faith

"A breach of the duty to defend in itself constitutes only a breach of contract, but it may also violate the covenant of good faith and fair dealing where it involves unreasonable conduct or an action taken without proper cause." *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881 (2000) (citation omitted). A breach of the covenant occurs when a party "engages in objectively

---

[2] Because the Court finds that Plaintiffs have stated a plausible claim for independent counsel based on Plaintiffs' and the City's adverse interests in the underlying LASC Action, the Court does not reach United National's reservation-of-rights and failure-to-defend arguments for dismissal.

unreasonable conduct, regardless of the actor's motive." *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, 596 F. Supp. 2d 1351, 1368 (E.D. Cal. 2009) (internal quotation marks omitted).

Plaintiffs make numerous allegations which might establish that United National breached the Policies, including United National's failure to provide Plaintiffs a timely defense, failure to provide counsel of Plaintiffs' choosing to avoid conflicting representation, and failure to fund Plaintiffs' independent counsel. (SAC ¶¶ 69–72.) Viewing the facts in the light most favorable to the non-moving party, the SAC adequately alleges that United National may have breached its duty to defend, and may have acted in bad faith in doing so. Therefore, Plaintiffs' claims for breach of the duty to defend and breach of the covenant of good faith and fair dealing survive dismissal. Accordingly, the Court **DENIES** the Motion with respect to Plaintiffs' third and fourth causes of action.

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** United National's Motion to Dismiss Plaintiffs' Second Amended Complaint.

**IT IS SO ORDERED.**

September 30, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**