JAMES C. NIELSEN (111889)
 *jnielsen@nkllp.law*
DANIEL N. KATIBAH (293251)
 *dkatibah@nkllp.law*
STUART E. JONES (104566)
 *sjones@nkllp.law*
NIELSEN KATIBAH LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

Attorneys for Defendant
UNITED NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| L.A. TERMINALS, INC. AND SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED NATIONAL INSURANCE COMPANY,<br><br>Defendant. | No.: 8:19-cv-00286-ODW-PVC<br><br>**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF UNITED'S MOTION FOR A PROTECTIVE ORDER (DKT. 105); LOCAL RULE 37-2.3**<br><br>Date: Jan. 25, 2022<br>Time: 10:00 a.m.<br>Room: 590<br>Judge: Hon. Pedro V. Castillo<br><br>Discovery Cutoff: November 19, 2021<br>Pre-Trial Conference: June 6, 2022<br>Trial: June 28, 2022 |

**1. Plaintiffs do not rebut that Mr. Elliott is an apex witness.**

United's moving papers included a detailed declaration from Mr. Elliott (Dkt. 105-2) explaining his position and duties as the Senior Vice President of Claims for Global Indemnity Group Services, LLC. (*Id.* at ¶¶ 6-11.) United then devoted three pages of briefing in the joint stipulation to comparing Mr. Elliott's declaration with the facts from similar apex-doctrine cases, including insurance cases, to demonstrate he is an apex individual in the first instance. (Dkt. 105-1, 8:24-11:19.) Plaintiffs challenged none of those points or authorities in the joint stipulation.

Instead, they mentioned in passing Mark DiGiovanni's deposition testimony that he makes a practice of talking with Mr. Elliott about claims, and Randi Hoffman's testimony that she sometimes talked about claims with Mr. Elliott, and then submitted without further explanation that "[s]uch involvement … undermines the claim that [Mr. Elliott] is an 'apex' executive in the first instance." (Dkt. 105-1, 25:22-23.) This meager attempt at addressing the merits is reason enough for the Court to declare the apex doctrine applicable to Mr. Elliott's deposition.

We further note here that plaintiffs' lone authority, a partial quote from *Apple Inc. v. Samsung Electronics, Ltd.*, 282 F.R.D. 259 (N.D. Cal. 2012), does not help them. As cited by plaintiffs (Dkt. 105-1, 25:23-28), the *Apple* court stated that "on the proverbial sliding scale, the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become." 282 F.R.D. at 263. This facially does not support plaintiffs' conclusion; hence the numerous insurance cases United cited holding that the apex doctrine protects similarly-situated claims executives. Plaintiffs do not, in any event, contest that Mr. Elliott sits on United's Board of Directors (Elliott Decl. [Dkt. 105-2], ¶ 2), reports to the CEO of Global Indemnity Group, LLC (*id.* at ¶ 8); that his duties entail high-level executive tasks (*id.* at ¶¶ 9-10); and that his duties "do not entail the handling of, or active participation in the handling of,

insurance claims." (*Id*. at ¶ 11.)

## 2. Plaintiffs have not met their burden of showing that Mr. Elliott has unique, first-hand knowledge of essential facts.

Plaintiffs do not grapple with *their* "burden" as "the party seeking the deposition to show that [Mr. Elliott] has unique, first-hand knowledge of facts essential to the case and that the information cannot be obtained through other means." *Cannavan v. County of Ventura*, 2021 WL 4945186 * 6 (C.D. Cal. July 16, 2021) (quots. omitted.) The facts do not support any such inference.

Hence, when plaintiffs say in the joint stipulation that "[f]acts developed in discovery suggest that Mr. Elliott has unique and personal knowledge," the first one they point to is that "Ms. Hoffman testified that she discussed claims with Mr. Elliott"—not that they discussed *these* claims—"and that he had 'final say' " over claim decisions. (Dkt. 105-1, 26:23-26.) Plaintiffs do not say that Mr. Elliott actually exercised "final say" here. Nor can they, because Mr. Elliott's declaration confirms his lack of involvement in the disputed claim decisions. (Dkt. 105-2, ¶¶ 12-15.) By nevertheless pointing to Mr. Elliott's "final say"—his authority to overrule everyone in the claims department—as grounds to depose him, plaintiffs are advocating for his deposition any time a Global Indemnity Group insurance company gets involved in litigation, i.e., "precisely the potential abuse that the apex doctrine is intended to prevent." *Cannavan*, 2021 WL 4945186 at * 7.

Plaintiffs then point to Mark DiGiovanni's deposition testimony explaining that he talks to Mr. Elliott every day, that his standard practice in supervising and handling claims is to keep Mr. Elliott periodically updated, that he told Mr. Elliott how plaintiffs' claims were being handled, and that Mr. Elliott "tacitly approved" of Mr. DiGiovanni's decisions here. (Dkt. 105-1, 26:26-27:14.) Mr. Elliott's "tacit" approval—his not overruling anyone, consistent with his declaration statement that his job is not to make day-to-day claim-handling decisions and that he was not involved here—is not indicative of his participation in plaintiffs' claims, nor of any

*unique* first-hand knowledge of facts *essential* to the case. Nor is Mr. DiGiovanni's explanation that he routinely keeps Mr. Elliott apprised of claims—Mr. Elliott should not be deposed because of Mr. DiGiovanni's responsible business practices.

The only other evidence plaintiffs point to is the April 2019 email between Mr. Elliott and Hoffman (Dkt. 105-1, 27:15-20). Remarkably, plaintiffs do not acknowledge that they obtained the email in discovery in May 2019, asked Hoffman no questions about it at her July 2021 deposition, and never asked her whether she had discussed *these* claims with Mr. Elliott at all. (Dkt. 105-1, 15:16-17:20.) They cannot, then, overcome the rule that an apex individual must have "factual information pertaining to material issues in an action" that "is not available through any other source." *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990). The "other source" was Ms. Hoffman and plaintiffs made no effort to extract from her the information—what she "may have discussed with Mr. Elliott regarding Plaintiffs' claims" (Dkt. 105-1, 27:24-26)—they allegedly need.

Lacking any other substantive arguments about the evidence, plaintiffs resort to speculation. They say they are entitled depose Mr. Elliott about "the extent to which [he] approved any aspect of Ms. Hoffman's" claim handling (Dkt. 105-1, 27:26-28) without confronting his declaration statement that he "had no involvement in, and was not asked to participate in, approve of, or overrule, any of the" disputed "claim-handling decisions …." (Dkt. 105-2, ¶ 12.) They also say Mr. Elliott must answer questions "about the practices and procedures" he personally "developed and/or maintained for the claims department he oversees at United National" (Dkt. 105-1, 27:28-28:1) without mentioning that they already deposed United's Rule 30(b)(6) witness (Mr. DiGiovanni) about the company's official claim-handling practices and have never adduced a shred of evidence suggesting that Mr. Elliott maintains his own, separate practices and procedures. (*Id.* at 17:24-18:8.) "A party is not entitled to depose a high-level corporate executive simply because the answer it received from lower-level employees was not to its liking." *Int'l Game Technology*

1  *v. Illinois Nat'l Ins. Co.*, 2018 WL 7499823 * 4 (D. Nev. April 6, 2018).

2  Plaintiffs also express concern about "a lack of oversight at United National" based on Mr. Elliott's statements that he was not involved in handling their claim and has not read their claim file. (Dkt. 105-1, p. 28, fn. 5.) Plaintiffs' editorializing is immaterial. So is their grumbling in the *next* footnote, that it is "disingenuous" for United to point out the lack of "additional evidence of Mr. Elliott's involvement … in light of the heavy redactions to virtually all of its production of documents." (*Id.* at fn. 6.) Plaintiffs *do* lack the evidence and the Court already decided "the vast majority of [United's] redactions are fully supported" in adjudicating plaintiffs' earlier motion to compel. (Dkt. 94, p. 2.)

At bottom, plaintiffs point to no evidence, and submit no argument, indicating that Mr. Elliott has unique knowledge, or any first-hand knowledge, of the facts that are "essential" to their claims. The Court may grant United's motion accordingly.

### 3.  Plaintiffs' "alternatives" to a deposition are irrelevant and revealing.

Plaintiffs complain in the joint statement that, after the November 18, 2021, informal conference with the Court, they offered to only depose Mr. Elliott for three hours instead of seven, but that United did not agree. (Dkt. 105-1, 30:22-27.) Plaintiffs suggest this is the relief the Court must order, because some courts have allowed apex depositions to proceed on strict time limits. (see Dkt. 105-1, 30:10-21.) That is not the law, as shown in the numerous cases United's joint stipulation arguments cited where apex depositions were barred outright.

Plaintiffs also point to an "alternative" arrangement whereby they offered to forego the deposition in exchange for United "agree[ing] to produce certain training materials that it is withholding" and also stipulating to a lengthy list of facts about Mr. Elliott's knowledge and conduct that plaintiffs could use as trial evidence. (Dkt. 105-1, 30:28-32:5.) The point about "training materials" is the subject of plaintiffs' separate motion to compel (see Dkt. 108 [Jan. 10, 2022, minute order re informal conference]) that United opposes. That dispute is, of course, irrelevant to the merits

here, and plaintiffs presumably raise it—including a lengthy footnote no. 7 (Joint Stipulation, p. 31) about its merits—just to cast United in a bad light.

The proposed stipulated facts, meanwhile, were inaccurate, so Mr. Elliott supplemented his declaration (the version of the declaration now in the record) and United provided it to plaintiffs. (Katibah Decl. Exh. I [Dkt. 105-15], p. 33 [Bates p. 130].) Plaintiffs responded by suggesting, again, that the deposition could be scrapped if United would stipulate that Mr. Elliott's declaration could be used "for all purposes in this lawsuit, including that it will be admissible at trial." (Dkt. 105-1, 32:12-14.) Counsel later clarified that plaintiffs wanted the deposition "introduced into evidence and used for any purpose that one could use deposition testimony." (Dkt. 105-20 [Jackson Decl., Exh. O], p. 3.)

Because the declaration is a limited document executed to support a discovery motion, not to reflect the full breadth of a deposition transcript, United asked plaintiffs to confirm that, if United agreed, it would have an opportunity to supplement or clarify Mr. Elliott's declaration in the event plaintiffs actually used it a trial, consistent with Fed. R. Civ. P. Rule 32(a)(6) governing the use of partial depositions. (Dkt. 105-20 [Jackson Decl., Exh. O, Dec. 21, 2021, email from Dan Katibah to Jimmy Tabb], p. 2.) Plaintiffs, through counsel, refused. (*Id*.)

In short, and contra plaintiffs' statement (see Dkt. 105-1, 32:15-17), United never "rejected this proposal" to obviate Mr. Elliott's deposition and thus this motion. Plaintiffs simply refused to guarantee the "fairness" contemplated by Rule 32(a)(6) in the event "a party offers into evidence only part of a deposition …."

January 11, 2022                                    Respectfully submitted,

                                                                         NIELSEN KATIBAH LLP

By:     */s/ Daniel N. Katibah*
       Daniel N. Katibah
       Attorneys for Defendant United Nat'l Ins. Co.