JAMES C. NIELSEN (111889)
 *jnielsen@nkllp.law*
DANIEL N. KATIBAH (293251)
 *dkatibah@nkllp.law*
STUART E. JONES (104566)
 *sjones@nkllp.law*
NIELSEN KATIBAH LLP
100 Smith Ranch Road, Suite 350
San Rafael, California 94903
Telephone: (415) 693-0900
Facsimile: (415) 693-9674

Attorneys for Defendant
UNITED NATIONAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| L.A. TERMINALS, INC. AND SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED NATIONAL INSURANCE COMPANY,<br><br>Defendant. | No.: 8:19-cv-00286-ODW-PVC<br><br>**UNITED'S OPPOSITION TO PLAINTIFFS' "MOTION TO ENFORCE … DUTY TO SUPPLEMENT UNDER" RULE 26(e)**<br><br>HON. PEDRO V. CASTILLO<br><br>Disc. Cutoff:      Nov. 19, 2021<br>Pre-Trial Conf:  June 6, 2022<br>Trial:              June 28, 2022 |

---

1. **Plaintiffs improperly chose not to seek relief from the District Judge.**

The case-management order admonishes that "[a]ny motion challenging the adequacy of responses to discovery must be heard sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted." (Dkt. 21, 2:28-3:2.) In other words, the order "mandate[s] that any discovery motion be filed, served, and calendar[ed] sufficiently in advance of the discovery cut-off date to permit responses to be obtained prior to such cut-off date." *Eastwood v. Sera Labs, Inc.*, 2021 WL 5169290 *2 (C.D. Cal. May 26, 2021) (construing Judge Klausner's identical case-management order).

The discovery deadline was November 19, 2021. (Dkt. 72.) Therefore, before moving for a protective order (Dkt. 105) to preclude a deposition that plaintiffs noticed just before the cutoff, the parties stipulated that this Court could "retain jurisdiction to rule on the motion" (Dkt. 96, 3:10-11) and submitted to District Judge Wright a proposed order (issued Dkt. 97) to that effect. Otherwise this Court could not have heard that motion because "magistrate judges lack authority to issue discovery orders after the deadline set by district judges." *Eastwood* at * 1.

So here. This months-late discovery motion cannot proceed without District Judge Wright's express authorization because "[a]ny application to modify an order entered pursuant to F.R.Civ.P. 16"—like the scheduling order—"shall be made to the judicial officer who entered the order." C.D. Cal. Local Rule 16-14. Plaintiffs made no such application to Judge Wright, either "by way of a stipulation" or through "a properly noticed motion supported by good cause." *Aardwolf Indus., LLC v. Abaco Machines USA, Inc.*, 2017 WL 10339007 *4 (C.D. Cal. Aug. 9, 2017), citing Fed. R. Civ. P. Rule 16. Plaintiffs' improper attempt to evade District Judge Wright defeats their emotive appeal that, if this motion is found "time-barred," Rule 26(e)'s supplementation requirement is "a dead letter in this District because there would be no mechanism to enforce it.' " (Dkt. 120, 5:10-13 (cits. omitted).)

**2.    Invoking Rule 26(e) does not render this motion timely.**

Plaintiffs claim this is a motion to enforce Rule 26(e)(1)'s requirement that parties "must supplement" disclosures made in response to a "request for production" when "the party learns that in some material respect the disclosure or response is incomplete or incorrect …." *Id.* at subd. (e)(1)(A). To circumvent the case-management order, plaintiffs assert that "a motion to enforce the supplementation requirement under Rule 26(e) may be brought after the close of discovery." (Dkt. 120, 4:25-27, citing *Gamevice, Inc. v. Nintendo Co.*, 2019 WL 5565942 at * 3 (N.D. Cal. Oct. 29, 2019).)

Plaintiffs are wrong. Such a blanket rule would undermine the established principles that "[u]ntimeliness is sufficient ground, standing alone, to deny a discovery motion" and that a "district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Wyles v. Sussman,* 445 F.Supp.3d 751, 754 (C.D. Cal. 2020) (cits. omitted).  Nor does plaintiffs' cited *Gamevice* case establish such an exception. There the magistrate judge allowed a post-cutoff Rule 26(e) motion because the plaintiff stopped supplementing periodic financial documentation after the discovery deadline in order to manipulate local rules governing discovery motions. *Id.* at *2-3. Nothing like that happened here.

Nor indeed is this a Rule 26(e) motion at all. Plaintiffs merely claim that once they asked United's Rule 30(b)(6) designee, Mark DiGiovanni, in deposition whether the disputed documents existed, "it triggered United National's duty to promptly supplement its production under Rule 26(e)." (Dkt. 120, 5:6-7.) But United has not "learn[ed] that" prior responses or document productions were "incomplete or incorrect." Fed. R. Civ. P. Rule 26(e)(1)(A). As set forth in the accompanying Declaration of Daniel Katibah, the disputed documents were and remain non-responsive to plaintiffs' requests for production from the beginning.[1]

---

[1] Plaintiffs' contention (Dkt. 120, 3:2) that United is "withholding [responsive] documents on the basis of" objections is inaccurate.  (See Katibah Decl., ¶¶ 9-12.)

Thus, plaintiffs have moved for an order that "United National shall produce all documents responsive [to] Plaintiffs' Request for Production No. 16 …." (Dkt. 120-3 [proposed order], 2:9-11.)  In other words, this is a straightforward motion requesting "an order compelling … production" on grounds that United "fail[ed] to produce documents … as requested under Rule 34." Fed. R. Civ. P. Rule 37(a)(3(iv).

Plaintiffs must show "good cause" to bring such a motion months after the discovery cutoff. *Aardwolf Indus., supra,* 2017 WL 10339007 at *4. They attempt to do so by claiming that responsive materials included "the training materials described in November 15, 2021 Rule 30(b)(6) deposition of Mark DiGiovanni." (Dkt. 120-3, 2:9-11.) But whether good cause exists on these facts—including that plaintiffs first "learned" of the disputed documents in a deposition they scheduled four days before the discovery cutoff (Dkt. 120, 5:5-7)—is a question for Judge Wright. *Aardwolf*, 2017 WL 10339007 at *4. Unless and until Judge Wright finds good cause, this Court should deny plaintiffs' motion as untimely.

**3.      The disputed materials are not responsive to plaintiffs' requests.**

Plaintiffs repeatedly claim this motion seeks production of United's "training materials" for claim handlers without ever telling the Court what the disputed documents are. (See generally, Dkt. 120, 3:10-4:11.) The documents are Power Point and written outlines prepared by outside law firms for use in those outside law firms' presentations to United personnel about claim-handling regulations, California law, and the law firms' suggested approaches to that law. (Katibah Decl., Exh. 1).

The law-firm outlines did not fall within plaintiffs' contested sixteenth request for production, which asked United for documents "… setting forth ***YOUR practices, procedures or guidelines*** RELATING TO the investigation, handling, assessment, processing, evaluation, acceptance, settlement, payment or denial of claims." (Dkt. 120-1 [Jackson Decl.], p. 14, emph. added.) That is, plaintiffs requested documents "setting forth" ***United's*** claim-handling "practices, procedures or guidelines."

At the time United responded that it "infers that plaintiffs are requesting a

1  copy of Global Indemnity's—United National's parent corporation—Best Practices

2  manual for handling claims, which contains confidential and proprietary business

3  information." (Dkt. 120-1 [Jackson Decl.], 20:18-26.) United then produced the

4  manual. (Katibah Decl., ¶ 6.) It did so because "insurers are required" per California

5  regulation "to maintain guidelines for the prompt processing of claims," and "[b]y

6  practice these guidelines are maintained in claims manuals that generally provide the

7  criteria for processing claims and the procedure for reporting claims to regional or

8  home office claims supervisors." *Glenfed Development Corp. v. Sup. Ct.* (1997) 53

9  Cal.App.4th 1113, 1118.) The manual is the only document responsive to the

10  sixteenth request for documents that set forth United's claim-handling "practices,

11  procedures or guidelines." Presentation outlines from outside law firms were not.

12        Plaintiffs' lone counterpoint is that, because the requests defined "YOUR" to

13  include "PERSONS acting on [United's] behalf, including but not limited to, its …

14  attorneys and agents," the outlines are responsive because they were "authored by

15  United National's panel counsel." (Dkt. 120, 6:4-8.)[2] But this is nonsense. United's

16  outside counsel are not insurance companies. No counsel maintains—and none is

17  required to maintain by any insurance regulator—its own claim-handling guidelines.

18  Certainly none maintains the discrete "practices, procedures or guidelines

19  RELATING TO the investigation, handling, assessment, processing, evaluation,

20  acceptance, settlement, payment or denial of claims" that plaintiffs' demanded.

21        Nor does it matter that, in plaintiffs' words, United's "claim handlers rely on

22  the" outlines "in handling claims" and that United keeps the outlines in "a

23  repository." (Dkt. 120, 6:8-10.) Legal resources (including access to treatises, legal

24  databases like Westlaw or Lexis, or other sources like presentation materials from

25  outside law firms) made available for claims personnel are not by their nature

26

27  [2] If, as plaintiffs contend, these attorneys were "acting on" United's "behalf" in

28  preparing the outlines, plaintiffs would need to concede that the outlines are shielded
    from disclosure by the attorney-client privilege.

1    "practices, procedures, and guidelines" as set forth in United's claim manual.

2        Plaintiffs also say that, because the Rule 26 report of United's expert Peter

3    Senuty commented on United's "proper claims handling" in providing "trainings"

4    and "seminars and presentations by panel counsel" to claims handlers, they "are

5    entitled to test the basis for this opinion by obtaining these training materials." (Dkt.

6    120, 6:13-21.) But plaintiffs know full well that Mr. Senuty has never seen the

7    outlines, which are not among the "Documents Reviewed" identified in Mr. Senuty's

8    Rule 26 expert report. (Katibah Decl., Exh. 2, pp. 008-009.) And, when plaintiffs

9    asked in deposition, Mr. Senuty confirmed that he never reviewed the outlines and

10   instead drew his conclusions from Ms. Hoffman's own deposition. (See *Id*. at Exhs.

11   3 [Senuty depo. excerpts] and 4 [Hoffman depo. excerpts].)

12       Plaintiffs sixteenth request simply did not ask for a listing of all investigatory

13   or legal resources made available to United claims personnel. It asked for United's

14   "practices, procedures or guidelines" for handling claims. United produced its

15   manual setting forth its practices, procedures, or guidelines. Had plaintiffs sought

16   something else United would have responded appropriately at the time. Now is long

17   past the time to rephrase ancient discovery requests.[3]

18

19   January 27, 2022

20

21

22

23

                                    Respectfully submitted,
                                    NIELSEN KATIBAH LLP

                            By:     _____/s/ Daniel N. Katibah_____
                                    Daniel N. Katibah
                                    Attorneys for Defendant United Nat'l Ins. Co.

24   _____

25   [3] In this vein, plaintiffs devote no argument to their footnoted claim (Dkt. 120, , p. 3,
     fn. 1) that the law-firm outlines are responsive to the fifth and sixth requests for
26   production.  We note here only that both requests demand documents "RELATING
     TO" United's coverage review and claim handling in connection with this case. (Dkt.
27   120-1 [Jackson Decl.], p. 13.)  There is no evidence that United used the outlines in
     reviewing coverage or handling there claims here, and the outlines are in any event
28   non-responsive based on plaintiffs' definition of "RELATING TO."  (*Id*. at p. 8.)