O

# United States District Court
# Central District of California

| | |
|---|---|
| L.A. TERMINALS, INC. and SOCO WEST, INC.,<br><br>                    Plaintiffs,<br><br>         v.<br><br>UNITED NATIONAL INSURANCE COMPANY,<br><br>                    Defendant. | Case № 8:19-cv-00286-ODW (PVCx)<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [79]** |

## I.  INTRODUCTION

This is an insurance coverage dispute between insureds, Plaintiffs L.A. Terminals, Inc. ("LAT"), and SOCO West, Inc. ("Soco") (collectively, "Plaintiffs"), and their insurer, Defendant United National Insurance Company ("Defendant" or "United").  Plaintiffs claim United breached its duty to defend them and provide independent counsel in two environmental contamination lawsuits.  (Second Am. Compl. ("SAC") ¶¶ 55–72, ECF No. 50.)  Plaintiffs move for summary judgment.  (Pls. Mot. Summ. J. ("PMSJ"), ECF No. 79.)  For the reasons discussed below, the Court **GRANTS IN PART** Plaintiffs' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.

### A. The Policies

From 1982 through 1985, United insured Plaintiffs under four primary comprehensive general liability policies (the "Policies"). (Pls. Statement of Uncontroverted Facts ("PSUF") 1, ECF No. 79-1.) The last three Policies also identify non-party the City of Los Angeles (the "City") as an additional insured. (Def. Statement Genuine Issues ("DSGI") & Additional Material Facts ("DAMF") 2, ECF No. 98-1.)

The Policies provide that United "shall have the right and duty to defend any suit against the insured seeking damages on account of . . . property damage." (PSUF 3.) The Policies further provide that United "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence." (PSUF 3.) The Policies define "occurrence," as "an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the insured." (*See, e.g.*, Decl. James A. Tabb ISO PMSJ ("Tabb Decl.") Ex. B ("Oct. 1982 Policy") 46, ECF Nos. 80, 80-2.) However, the Policies exclude coverage for property damage that is caused by the "discharge, dispersal, release or escape" of "irritants, contaminants or pollutants" (the "Qualified Pollution Exclusion"). (PSUF 4.) This exclusion does not apply where the "discharge, dispersal, release, or escape is sudden and accidental." (PSUF 4.)

### B. The Underlying Actions

In March 2018, LAT was first served in an action the City filed against it in Los Angeles Superior Court (the "LASC Action"), alleging environmental contamination due to LAT's operations at a City-owned marine terminal and chemical storage facility (the "Site") during the policy periods. (PSUF 5–6; *see* Tabb Decl. Ex. E ("City LASC FAC") ¶ 11, ECF No. 80-5.) The City alleged the pollution had been

ongoing for decades and was caused, in part, by hazardous materials that "leaked from storage tanks, pipes, spilled or were disposed of on the ground, into the soil and seeped into the groundwater." (City LASC FAC ¶¶ 18, 23.) The City further alleged that defendants "were negligent in . . . their receiving, storing and handling of hazardous substances and chemicals on the Site premises." (*Id.* ¶ 26.)

In August 2018, LAT counter- and cross-claimed in the LASC Action against the City and others, contending that these parties were responsible for the alleged pollution at the Site. (PSUF 12.) LAT specifically alleged that the purported environmental contamination was "caused by various sudden and accidental releases, and other discharges and releases of [h]azardous [m]aterials." (PSUF 12.)

In November 2018, LAT initiated a separate action in the Central District of California against the City and others under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), involving the same alleged "sudden and accidental" environmental contamination at issue in the LASC Action (the "Federal Action"). (PSUF 13; Tabb Decl. ¶ 9.) Third-party defendant Occidental Chemical Corporation ("Occidental") countersued LAT and sued Soco as a third-party defendant in the Federal Action for the same environmental contamination, and specifically alleged a "sudden and accidental" release of pollutants. (PSUF 19–20.)

In May 2019, the City amended its complaint in the LASC Action and added Soco as a defendant. (PSUF 33.) The City's LASC Second Amended Complaint ("SAC") also now specified that LAT and Soco's alleged contamination occurred "suddenly and accidentally, and over long periods of time." (PSUF 33; Tabb Decl. Ex. Z ("City LASC SAC") ¶ 41, ECF No. 80-26.)[2]

**C. Coverage Dispute**

In May 2018, LAT first tendered the City's LASC First Amended Complaint to United for a defense under the policies. (PSUF 8.) In a letter dated August 6, 2018, United, relying on the Qualified Pollution Exclusion, "disclaim[ed] any duty to defend

---

[2] The Court refers to the LASC and Federal Actions collectively as the "Underlying Actions."

or indemnify [LAT]" because, at the time, the City had not expressly alleged a "sudden and accidental" release of pollutants. (Tabb Decl. Ex. M ("United-LAT 2018 Disclaim Letter") at 252–53, ECF No. 80-13.) United invited LAT to provide any additional facts or evidence supporting covered liability. (*Id.* at 253.)

The City, as an additional insured, also tendered its defense of LAT's claims in the LASC and Federal Actions to United under the policies. In September 2018, United agreed to defend the City under a reservation of rights. (DSGI 18; *see* Tabb Decl. Exs. P & Q ("United-City 2018 Coverage Letters") at 274 (P) & 285 (Q), ECF Nos. 80-16, 80-17.) United stated it agreed to defend the City against LAT's claims because LAT's pleadings specifically alleged a "sudden and accidental" release of hazardous materials. (United-City 2018 Coverage Letters at 280 (P) & 291 (Q).)

In February 2019, LAT and Soco jointly tendered the defense of the LASC and Federal Actions to United. (PSUF 21.) In April 2019, United agreed to defend LAT and Soco in both actions, pursuant to a reservation of rights. (PSUF 22.) Until this time, United had maintained a unified claim file for Plaintiffs and the City, with a single claim handler, Randi Hoffman, managing the claims of each insured against the other. (PSUF 30–31.) After United accepted Plaintiffs' defense, it split the claim file. (DAMF 56.)

In its letter accepting Plaintiffs' defense, United agreed to defend Plaintiffs in the Federal Action because Occidental's counterclaim alleged "sudden and accidental" release of hazardous materials, and although the City's counterclaim did not use this language, it was "premised on the same events and alleged pollution." (Tabb Decl. Ex. U ("United-LAT 2019 Coverage Letter") at 356, ECF No. 80-21.) Similarly, United agreed to defend Plaintiffs in the LASC Action because the claims and issues in the LASC Action were "the same claims and issues being contested in" the Federal Action, though those pleadings also lacked explicit allegations of "sudden and accidental" releases. (*Id.* at 357.) United reserved the right to withdraw the defense if no "sudden and accidental" releases occurred. (*Id.*)

4

When LAT was first served with the LASC Action, it retained the law firm of Rutan & Tucker for its defense; Rutan & Tucker continues to defend LAT and Soco in both Underlying Actions. (PSUF 9; Decl. Raj Mehta ISO PMSJ ("Mehta Decl.") ¶ 4, ECF No. 79-2.) United did not pay for the defense fees and costs LAT and Soco had incurred, (PSUF 23), and offered to appoint John Brydon of Demler Armstrong & Rowland LLP as Plaintiffs' defense counsel, (PSUF 24). Plaintiffs argued they were entitled to continued representation through Rutan & Tucker, as independent counsel. (PSUF 26.) United refused Plaintiffs' demand for independent counsel and has not paid any amount of Plaintiffs' defense costs. (PSUF 27, 29.)

**D.  Procedural History**

Plaintiffs assert three causes of action against United: (1) declaratory relief—duty to defend upon tender of the LASC Action; (2) declaratory relief—right to independent counsel; (3) breach of the duty to defend.[3] (SAC ¶¶ 55–72.)

On September 30, 2020, the Court denied United's Motion to Dismiss Plaintiffs' SAC. (Order Den. Mot. Dismiss, ECF No. 59.) Notably, the Court found that, under the facts as alleged by LAT and Soco, United owed a duty to defend in the LASC Action as soon as LAT tendered the City's First Amended Complaint. (*Id.* at 10.) The Court also found that Plaintiffs had stated a plausible claim for independent counsel, based primarily on the conflict presented by United providing a defense to direct litigation adversaries. (*Id.* at 14.)

Plaintiffs now move for summary judgment on all three claims. (PMSJ 1–4.) The Motion is fully briefed, including a surresponse from United filed with the Court's permission. (Def. Opp'n MSJ ("Opp'n"), ECF No. 98; Pls. Reply ("Reply"), ECF No. 106; Def. Surresp., ECF No. 114.)

---

[3] The parties settled their dispute regarding Plaintiffs' fourth cause of action for breach of the covenant of good faith and fair dealing. (Notice of Partial Settlement, ECF No. 126.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex*, 477 U.S. at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for

trial." *Id.* (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

## IV.     PRELIMINARY MATTERS

### A.     Evidentiary Objections

United objects to two items of Plaintiffs' evidence as violating hearsay and best evidence rules, specifically: (1) paragraph five of the Mehta Declaration, and (2) Exhibit AA to the Tabb Declaration. (Def. Obj. Pls. Evid., ECF No. 98-2.) Mehta is the President of LAT and Soco; he declares in paragraph five, "The total amount that Plaintiffs have incurred to date in out-of-pocket defense expenses (fees and costs) in connection with the underlying actions is $3,267,880.04. United National has not paid any of Plaintiffs' defense expenses." (Mehta Decl. ¶ 5.) Exhibit AA consists of copies of letters from Latham & Watkins, Plaintiffs' counsel here, sent to United "providing defense expense amounts incurred by Plaintiffs in connection with the Underlying Actions." (Tabb Decl. ¶ 22.) United objects to the extent these documents are offered to support Plaintiffs' sum of monetary damages. (*See* Def. Obj. Pls. Evid. 2.)

Federal Rule of Civil Procedure 56(c)(4) requires that an affidavit or declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Mehta's statement meets these requirements and, to the extent it is offered to state Mehta's knowledge, does not constitute hearsay or violate the best evidence rule. The Court accepts it for this purpose and United's objection to paragraph five of the Mehta Declaration is **OVERRULED**.

The letters from Latham & Watkins to United indicate defense amounts Plaintiffs incurred in the Underlying Actions, but Exhibit AA omits the legal invoices from which the amounts derive. The letters therefore constitute hearsay in that they are offered for the truth of the invoice amounts listed, and Plaintiffs provide no applicable hearsay exception. *See* Fed. R. Evid. 801, 802. The Court therefore considers the letters only to the extent they establish that Plaintiffs incurred and submitted defense amounts to United, but not for the truth of the invoice figures. When limited to this purpose, the letters do not violate the best evidence rule. Accordingly, United's objection to Exhibit AA is **SUSTAINED IN PART** and **OVERRULED IN PART**.

United also objects to portions of a declaration and two exhibits Plaintiffs submitted with the Reply. (*See* Def. Surresp.; Decl. Kristen C. Jackson ("Jackson Decl.") ¶¶ 2–3, Exs. AB & AC, ECF Nos. 106-1 to 106-3.) United argues the Court should not consider the new evidence without giving United an opportunity to respond. (Def. Surresp. 2.) However, the Court granted United permission to file the Surresponse, thereby eliminating the prejudice United claims. Accordingly, United's objection to Plaintiffs' evidence in Reply is **OVERRULED**.

### B. Requests for Judicial Notice

United requests that the Court take judicial notice of a partial list of attorneys in an action before the San Francisco Superior Court. (Def. RJN, ECF No. 100.) Plaintiffs object. (Pls. Obj. Def. RJN, ECF No. 107.) The Court finds the material submitted both incomplete and immaterial. United's request is **DENIED**.

Plaintiffs request that the Court take judicial notice of pleadings filed in this and the Underlying Action. (Pls. RJN, ECF No. 79-3.) United does not object. The Court **GRANTS** Plaintiffs' request, but does not take judicial notice of disputed facts within the pleadings. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

## V. DISCUSSION

Plaintiffs move for summary judgment, or partial summary judgment, on Plaintiffs' claims that: (1) United had a duty to defend Plaintiffs in the LASC Action from initial tender; (2) United must provide a defense through Plaintiffs' selected independent counsel; and (3) United breached its duty to defend. (PMSJ 1–4.)

### A. Duty to Defend (First Claim)

Plaintiffs move for summary judgment on their first claim, by which they seek a judicial determination that United owed LAT a duty to defend it in the LASC Action from May 4, 2018, the date of initial tender. (PMSJ 12–15.)

An insurer's duty to defend is broader than its duty to indemnify and may apply even in an action where no damages are ultimately awarded. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). The duty to defend arises as soon as the insured tenders a claim that involves a potentially covered loss. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993). "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Id.* at 300 (emphasis in original). Even if the precise causes of action pleaded fall outside of the policy coverage, the insurer's duty to defend may not be excused "where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275–76 (1966)). However, the "insurer's duty to defend does *not* extend to claims for which there is no potential for liability coverage"; this includes claims which fall outside the scope of the policy or are expressly excluded. *See Alterra Excess & Surplus Ins. Co. v. Snyder*, 234 Cal. App. 4th 1390, 1401 (2015).

In ruling on the Motion to Dismiss, the Court previously compared the City's LASC First Amended Complaint to the applicable policies and found it "clear that the LASC Action is a 'suit' seeking damages against the insured Plaintiffs due to an 'occurrence' causing 'property damage' during the Policies' coverage period." (Order

Den. Mot. Dismiss 8.) "Those bare facts alone give rise to a duty to defend." (*Id.*) United fails to raise any genuine dispute on this issue, and nothing before the Court disturbs its prior conclusion.

The undisputed facts and evidence only further reinforce that United's disclaimer of coverage upon LAT's initial tender was unreasonable. For instance, Plaintiffs submit United's letters disclaiming coverage, which explain that United denied coverage because the City did not allege the specific language "sudden and accidental" in the LASC First Amended Complaint. (*See* United-LAT 2018 Disclaim Letter.) The California Supreme Court rejected this very position when it noted that "courts do not examine only the pleaded word but the potential liability created by the suit." *Gray*, 65 Cal. 2d at 276. California law is clear that an insurer "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls." *Id.*

What matters is whether it was "reasonably inferable" from the LASC First Amended Complaint that the City's claim against LAT was *potentially* covered under the Policies. *Scottsdale Ins. Co.*, 36 Cal. 4th at 654. The City alleged that LAT was negligent in handling hazardous substances and chemicals, and the Court found this was broad enough to include "accidental" releases. (*See* Order Den. Mot. Dismiss 9.) That the contamination allegedly occurred over decades does not foreclose the possibility that LAT's alleged contribution to the contamination could have been "sudden." (*See id.* (quoting *Horace Mann*, 4 Cal. 4th at 1081 ("Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor.")).) Thus, although the City did not use the words "sudden and accidental" in its FAC, it was "reasonably inferable" from the allegations that the claim was at least "potentially covered by the policy" and therefore United owed LAT the duty to defend. *See Scottsdale Ins. Co.*, 36 Cal. 4th at 655.

Nevertheless, United now contends Plaintiffs are not entitled to summary judgment on the duty to defend claim. (Opp'n 10.) A district court may grant

declaratory judgment where an actual controversy exists. 28 U.S.C. § 2201(a). United argues the undisputed facts show United eventually agreed to defend Plaintiffs in the Underlying Actions, so declaratory judgment is not available "because no actual controversy about the duty to defend exists." (*Id.*)

The undisputed facts of this case do establish that United agreed in April 2019 to defend Plaintiffs in both Underlying Actions. (PSUF 22.) However, United continues to dispute that its duty to defend was triggered upon LAT's *initial tender* in May 2018. (Opp'n 3, 20–21.) United goes so far as to urge the Court to "revisit" and reverse its prior ruling on the matter. (*Id.* at 20–21; *see* Order Den. Mot. Dismiss 10.) As such, an actual controversy persists regarding *when* United's duty to defend arose.

The undisputed facts establish that United owed a duty to defend immediately upon LAT's initial tender in May 2018, and United presents nothing to controvert this conclusion. Plaintiffs are therefore entitled to judgment as a matter of law on the first claim.

**B.  Right to Independent Counsel (Second Claim)**

Plaintiffs also move for summary judgment on their second Claim, seeking a judicial determination that they are entitled to independent counsel. (PMSJ 15–22.)

When competing interests of the insured and the insurer create an ethical conflict for counsel, the insurer must provide its insured with the insured's chosen independent counsel. *See, e.g.*, *Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1469 (2008); *Previews, Inc. v. Cal. Union Ins. Co.*, 640 F.2d 1026, 1028 (9th Cir. 1981). This is known as *Cumis* counsel, emanating from the California case *San Diego Navy Federal Credit Union v. Cumis Insurance Society, Inc.*, 162 Cal. App. 3d 358 (1984). *Cumis* was later codified in California Civil Code section 2860, which clarifies the rights of the insurer in conflict of interest situations. However, "not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel." *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1394 (1993). The conflict of interest must be actual and

significant, not merely theoretical. *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093, 1101 (2001).

Plaintiffs argue they are entitled to independent counsel on three grounds: (1) the direct conflict between the City and Plaintiffs as direct adversary-insureds; (2) United's reservation of rights as to Plaintiffs' defense; and (3) United's breach of its duty to defend upon LAT's initial tender. (PMSJ 17–24.) The Court finds summary judgment for Plaintiffs warranted based on the direct conflict and United's reservation of rights, and therefore does not reach Plaintiffs' third argument.

      *1.     Direct Conflict*

Plaintiffs contend United's agreement to defend direct adversaries—the City and Plaintiffs—creates an untenable conflict of interest necessitating independent counsel. (PMSJ 17–22.) The Court previously found Plaintiffs had plausibly stated a claim for independent counsel on this basis. (Order Den. Mot. Dismiss 10–14.) Now, on summary judgment, United repeats the same arguments and authority it raised in its motion to dismiss, which the Court previously considered and rejected. United presents no valid basis for reconsideration and has not addressed the legal standard for such a request. (*See* Opp'n.) In any event, the Court finds the undisputed facts and evidence here demonstrate that Plaintiffs are entitled to independent counsel.

In the Underlying Actions, the City and Plaintiffs sued each other for liability, contribution, and indemnity, among others claims, all relating to environmental contamination at the Site. (*See* PSUF 5–6, 12–13.) United first agreed to defend the City as an additional insured under the Policies, against LAT's claims; it later agreed to defend Plaintiffs in the same actions against the City's claims on the same issues. (DSGI 18; PSUF 22.) Thus, the undisputed facts and evidence establish that United agreed to provide a defense to adversary-insureds in direct litigation conflict, each seeking to find the other liable for all or part of the alleged contamination. The Court previously found such a direct conflict supports the need for Plaintiffs' independent counsel, and the Court reaffirms that finding here. (Order Den. Mot. Dismiss 14); *see*

*also James 3*, 91 Cal. App. 4th at 1101 (citing *O'Morrow v. Borad*, 27 Cal. 2d 794, 799 (1946)); *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 19 Cal. App. 5th 789, 803 (2018) (discussing *O'Morrow* and finding the "conflict was clear" between the direct-adversary-insureds, such that the insurer could not "control both sides of the litigation").

United argues that, even if the Court finds a conflict of interest warranting independent counsel, United reconciled the conflict by splitting the claim file for each insured and appointing segregated liability adjusters. (Opp'n 17.) This argument is unavailing. The evidence establishes that, after United agreed to defend LAT and Soco, in April 2019, it separated the claim files and hired different law firms to defend the City and Plaintiffs. (*See* Tabb Decl. Ex. I ("Hoffman Dep.") 174–76, ECF No. 80-9; PSUF 30–32; DAMF 56.) But the undisputed facts and evidence also establish that at least six months passed after United accepted the City's defense before United finally segregated the file. (DSGI 18 (United accepted City's defense in September 2018); PSUF 22 (United agreed to defend Plaintiffs in April 2019).) It was not until United agreed to defend Plaintiffs *as well* that it finally split the claim file. Throughout this time, a single claims handler, Randi Hoffman, handled the unified file and when the file was eventually split, Hoffman sent the "master files"—including an attorney's claims assessment report—to both new adjusters. (Reply 6; Jackson Decl. Exs. AB, AC.) United argues that the new adjusters did not "actually read documentation about the other side of the claim," (Def. Surresp. 5), but offers no support for this speculative, eleventh-hour argument, which in any event does not negate that United *sent the master claims files to both sides*. Thus, United did not reconcile the conflict of interest created by its defense of direct litigation adversaries.

The undisputed facts establish that Plaintiffs are entitled to independent counsel as a matter of law, and United fails to raise a genuine dispute of material fact to disturb that conclusion. Plaintiffs' Motion is therefore granted as to the second claim.

### 2. Reservation of Rights

Plaintiffs also argue that United's reservation of rights, specifically its right to deny coverage if the alleged contamination in the Underlying Actions is proven to fall within the Qualified Pollution Exclusion, creates grounds for independent counsel. (PMSJ 20.)

An insurer that agrees to defend its insured may reserve its rights regarding that defense, for instance to later deny coverage, withdraw defense, or disclaim indemnity. *See Fed. Ins. Co. v. MBL, Inc.*, 219 Cal. App. 4th 29, 42–44 (2013). Not every reservation of rights by an insurer necessarily constitutes a conflict of interest requiring the insurer to provide independent counsel. *Id.* at 42. Rather, such a conflict usually "involve[s] the insured trying to obtain coverage and the insurer trying to avoid it." *Assurance Co. of Am. v. Haven*, 32 Cal. App. 4th 78, 84 (1995). Thus, independent counsel may be required "when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." Cal. Civ. Code § 2860(b).

United reserved "the right to disclaim indemnity and the right to withdraw from defending [Plaintiffs] should it be discovered that no 'sudden and accidental' releases did, in fact, occur."[4] (*See* United-LAT 2019 Coverage Letter 357.) Under those circumstances, the Qualified Pollution Exclusion would apply and exclude coverage. The City sued numerous parties, who in turn countersued the City and each other, based on allegations of environmental contamination both deliberate and accidental, sudden and over long periods of time. (*See* PSUF 33 (quoting City LASC SAC).) These claims and counterclaims put the nature of the alleged contamination at issue in the Underlying Actions, including whether and to what extent Plaintiffs may be liable. Thus, by controlling Plaintiffs' defense, United would have the ability to direct a more vigorous defense against a liability theory based on ongoing, deliberate pollution

---

[4] United attempts to parse its reservation of rights by waiving "accidental" while reserving "sudden" contamination. (*See* Opp'n 19.) But the Qualified Pollution Exclusion excepts "sudden and accidental," not "sudden or accidental." (*See, e.g.*, Oct. 1982 Policy 33.)

(which precludes Plaintiffs' coverage) versus sudden, unexpected contamination (which provides Plaintiffs' coverage). Therefore, United's appointed counsel could control the outcome of the very issue on which United has reserved its right to withdraw Plaintiffs' defense. This conflict of interest warrants independent counsel. *See Golden Eagle*, 20 Cal. App. 4th at 1395 (describing insurer-appointed attorney-control of a coverage dispute as a paradigmatic conflict of interest requiring independent counsel).

The circumstances here are not like those in *Federal Insurance Co. v. MBL, Inc.*, where the court found the insurer's assumption of the defense under a full reservation of rights created no conflict. 219 Cal. App. 4th at 42–44. The court in *MBL* rejected the insured's argument that a conflict arose due to the insurer's reservation of rights under the qualified pollution exclusion because the insurer had never issued a reservation of rights under that exclusion. *Id.* at 44 ("Where the insurer has not expressly reserved its right to deny coverage under a particular exclusion in its policy, there can be no actual conflict based on the application of that exclusion during the pendency of the action."). Here, in contrast, United did expressly reserve its right to disclaim coverage based on the Qualified Pollution Exclusion.

The undisputed facts establish that United's express, specific reservation of rights under the Qualified Pollution Exclusion created a conflict of interest requiring independent counsel as a matter of law. Accordingly, Plaintiffs are entitled to summary judgment on their second claim for this reason as well.

**C.     Breach of the Duty to Defend (Third Claim)**

Plaintiffs move for summary judgment on the third claim, that United breached its duty to defend Plaintiffs by refusing to (a) immediately defend LAT upon its initial tender of the LASC Action; (b) reimburse LAT's and Soco's defense costs to date, once United did accept the defense; and (c) provide LAT and Soco independent counsel. (PMSJ 22–24.)

"When the underlying complaint states an injury potentially covered by the insurance contract, the insurer breaches its duty to defend by refusing to defend its insured." *Burgett, Inc. v. Am. Zurich Ins. Co.*, 830 F. Supp. 2d 953, 964 (E.D. Cal. 2011) (citing *Gray*, 65 Cal. 2d at 279). The duty to defend arises when tender is made. *The Hous. Grp. v. PMA Cap. Ins. Co.*, 193 Cal. App. 4th 1150, 1155 (2011). To defend meaningfully, an insurer must defend immediately and entirely. *Buss v. Super. Ct.*, 16 Cal. 4th 35, 59 (1997). Thus, an insurer also breaches its defense obligations under California law by failing to timely pay defense costs. *See The Hous. Grp.*, 193 Cal. App. 4th at 1157 (finding that insurer's failure to pay defense fees until the end of the litigation was "the equivalent of a defense denial"); *Janopaul + Block Cos. v. Super. Ct.*, 200 Cal. App. 4th 1239, 1249 (2011) ("Unreasonable delay in paying policy benefits . . . is an actionable withholding of benefits which may constitute a breach of contract . . . ." (first alteration in original)).

United contends that it did not breach because it eventually accepted LAT's defense of the LASC Action, and because it accepted LAT's first tender of the Federal Action and Soco's initial tender of both actions. (Opp'n 10–12, 15–21.) United also contends that LAT is responsible for United's delay accepting the defense because LAT refused to provide additional facts and evidence to establish LAT's coverage. (Opp'n 12–14.) The Court first addresses whether United breached its duty with respect to LAT's defense in the LASC Action, and then addresses whether United breached its duty with respect to LAT's defense in the Federal Action or Soco's defense in both Underlying Actions.

1. *LAT—LASC Action*

The Court has already explained, more than once, that United owed a duty to defend LAT in the LASC Action upon LAT's initial tender in May 2018. United disclaimed coverage in August 2018 and again in September 2018. Therefore, United breached its duty by refusing to defend LAT. *See Gray*, 65 Cal. 2d at 279–80.

United may not shift the blame to LAT by arguing LAT failed to provide facts and evidence to establish its own policy coverage. In attempting to shift its burden to LAT, United misapplies well-established law. *See Montrose*, 6 Cal. 4th at 295 ("[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." (alteration in original)). Nor does United's eventual acceptance, nearly a year later and after LAT tendered defense of the LASC Action again, cure its breach. *See Shade Foods, Inc. v. Innovative Prod. Sales & Mktg, Inc.*, 78 Cal. App. 4th 847, 881 (2000), *as modified on denial of reh'g* (Mar. 29, 2000) ("[A] belated offer to pay the costs of defense may mitigate [the insurer's] damages but will not cure the initial breach of duty.").

Next, although United eventually accepted LAT's defense in the LASC Action, in April 2019, United refused to pay LAT's incurred defense costs. Indeed, there is no dispute that, to date, United has still not paid one cent of LAT's defense costs. (PSUF 23, 29.) One reason the duty to defend arises immediately upon a showing of potential coverage is to "reliev[e] the insured from the burden of financing his own defense." *See The Hous. Grp.*, 193 Cal. App. at 1156. United's refusal to defend forced LAT to fund its own defense of the LASC Action. Therefore, United's refusal to reimburse LAT's incurred defense costs, even after belatedly acknowledging its duty to defend, also constitutes a breach of United's defense obligations. *See Buss*, 16 Cal. 4th at 58 ("The insurer has a duty . . . to mount and *fund a defense*." (emphasis added)).

Finally, United still refuses to provide Plaintiffs independent counsel for the LASC Action. As discussed above, United reserved its rights as to a factual, coverage-determinative issue, thereby entitling LAT to independent counsel. Accordingly, United's refusal to provide independent counsel, or to reimburse LAT for the defense costs incurred, also constitutes a breach. *See Golden Eagle*, 20 Cal. App. 4th at 1394–95; *Previews*, 640 F.2d at 1028 (stating that the duty to defend extends to funding independent counsel).

### 2. *LAT—Federal Action; Soco—LASC & Federal Actions*

LAT first tendered its defense in the Federal Action to United in February 2019. This is also when Soco first tendered its defense in both the LASC and Federal Actions. United accepted LAT's and Soco's defense upon these initial tenders. Thus, United did not breach its duty to defend by refusing coverage. *Cf. Burgett*, 830 F. Supp. 2d at 964 (stating that an insurer breaches its duty to defend by refusing to defend where there is a potential for coverage).

However, United refused to reimburse LAT and Soco for defense costs incurred in defending these actions and refused to fund independent counsel after reserving its right to withdraw the defense based on a coverage-determinative issue. As discussed above, these actions by United constitute breaches of its defense obligations, as to LAT in its defense of the Federal Action and as to Soco in its defense of both actions.

### 3. *Damages from Breach*

United argues that, even if the Court finds United breached its duty to defend, Plaintiffs cannot establish the third claim because they cannot prove the damages element of the breach cause of action. (Opp'n 21–25.)

The measure of damages for breach of duty to defend comprises "the full amount of any obligation" the insured reasonably incurs in mounting and conducting its defense. *Gray*, 65 Cal. 2d at 280. This generally "consists of the insured's cost of defense in the underlying action, including attorney fees." *Janopaul*, 200 Cal. App. 4th at 1249.

First, United argues Plaintiffs failed to mitigate their damages when they did not accept defense coverage from excess insurers. (Opp'n 21–23.) However, United owed a duty to defend its insureds, "separate and independent" from any other insurer. *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 70 (1997). United offers no authority that requires Plaintiffs to accept excess insurance, in this case to their detriment, to cover the costs Plaintiffs incurred because United breached its duty. (*See* Reply 10 (explaining that the excess policies would erode coverage limits).)

Next, United argues Plaintiffs cannot establish their claim for breach because Plaintiffs submitted inadequate proof of damages with the Motion. (Opp'n 24–25.) The insured must prove the existence and amount of costs incurred in defense of an action before the burden shifts to the insurer to prove the claimed expenses are unreasonable or unnecessary. *State v. Pac. Indem. Co.*, 63 Cal. App. 4th 1535, 1548–49 (1998) (quoting *Aerojet*, 17 Cal. 4th at 64).

Plaintiffs submit letters they sent to United, informing United of Plaintiffs' incurred defense costs and attaching Plaintiffs' legal invoices. (Reply 11.) Plaintiffs also submit Mehta's declaration stating that the invoices totaled $3,267,880.04 when the Motion was filed. (Mehta Decl. ¶ 5.) However, Plaintiffs did not submit the legal invoices themselves to the Court, due to their sensitive nature. (Reply 11.) Plaintiffs have thus established the fact of their damages, but not specific amounts. As noted, the Court does not accept the letters or Mehta's declaration as establishing the truth of the defense costs asserted. Additionally, by omitting the invoices themselves from the evidence offered to support Plaintiffs' Motion, Plaintiffs have deprived United of the opportunity to challenge, on the record, the reasonableness and necessity of the claimed expenses. This lack is not remedied by Plaintiffs' offer of *in camera* review.

Plaintiffs moved for partial summary judgment, and the undisputed facts establish Plaintiffs have incurred defense costs due to United's breach—costs United still refuses to pay. Therefore, Plaintiffs are entitled to judgment as a matter of law on United's liability for breach. However, Plaintiffs fail to establish the amount of damages incurred as a result of United's breach, so Plaintiffs are not entitled to summary judgment on the amount of their damages.

## VI. CONCLUSION

As discussed above, the Court **GRANTS IN PART** Plaintiffs' Motion for Summary Judgment. (ECF No. 79.) The Court finds: (1) United owed a duty to defend from May 4, 2018; (2) Plaintiffs are entitled to independent counsel to be provided by United; and (3) United breached its duty to defend LAT and Soco.

The Court finds the amount of Plaintiffs' damages from United's breach, as well as the reasonableness and necessity of those expenses, is most appropriately resolved by the Court. *See Pac. Indem. Co.*, 63 Cal. App. 4th at 1548–49 (describing the respective burdens of proof for establishing an insured's costs incurred in defense of an action). Accordingly, the Court orders the following briefing schedule. **On or before July 1, 2022**, Plaintiffs shall submit a supplemental brief establishing Plaintiffs' claimed damages resulting from United's breach of duty as well as Plaintiffs' admissible evidence in support of that damages figure. Plaintiffs may apply to file any confidential material under seal pursuant to the Court's Local Rules. **On or before July 11, 2022**, United may file a supplemental brief in response to Plaintiffs' claimed damages from United's breach. The parties may note any objection to the Court determining Plaintiffs' damages in their briefs.

The matter shall be deemed submitted as of the Court's receipt of United's response or on July 12, 2022, whichever occurs first. The Court will set a hearing should it find one necessary.

**IT IS SO ORDERED.**

June 21, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**